DAVID M. SWAIN & SON, Appellants, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD Co. Appellee.

*Opinion filed December 21, 1911—Rehearing denied Feb. 8, 1912.*

1. NUISANCES—*obstruction of a navigable stream is a public nuisance.* The obstruction of a navigable stream so as to interfere with the free enjoyment of the public easement therein is a public nuisance, and any person who erects or maintains such obstruction may be proceeded against by indictment or information.

2. SAME—*what essential to enable a private person to recover damages from public nuisance.* The gist of an action by an individual for damages from a public nuisance is the private injury to him, and he must allege and prove some special damage different in kind, and not merely in degree or extent, from the damages sustained by the general public.

3. SAME—*test in determining whether individual sustains special damage.* The test in determining whether the damage sustained by an individual from a public nuisance is special is whether the injury complained of is a violation of an individual right of the complaining party or is merely a hindrance to him in the enjoyment of a right enjoyed in common with every other person.

4. SAME—*when a declaration does not show a special injury to plaintiff.* A declaration in an action by a steamboat owner against a railroad company for damages to plaintiff's business due to the obstruction of a navigable river by defendant's bridge, does not show a special damage where it appears therefrom that the bridge was constructed long before the plaintiff desired to navigate the river, and it is not shown that the plaintiff has any riparian rights that are interfered with, or any other right except the right, possessed in common with every other person, to navigate the river.

FARMER and COOKE, JJ., dissenting.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

SUCHER, McNEMAR & MOORE, for appellants.

JACK, IRWIN, JACK & MILES, (CHESTER M. DAWES, and J. A. CONNELL, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

David M. Swain & Son filed a declaration in the Peoria circuit court against the Chicago, Burlington and Quincy Railroad Company to recover damages from the defendant for maintaining a railroad bridge across the Illinois river at LaSalle, alleging that said bridge was an obstruction to the plaintiffs' steamboats which they were operating between Peoria and Ottawa for the carriage of both passengers and freight, whereby the plaintiffs were damaged in the loss of divers profits which they would otherwise have made. To the amended declaration, which contained five counts and three additional counts, the defendant interposed demurrers, both general and special, which were sustained, and the plaintiffs having elected to abide by their declaration, the court rendered judgment against them for costs. This judgment was affirmed by the Appellate Court for the Second District. The case comes to this court on a certificate of importance given by the judges of the Appellate Court.

The only question involved is whether the court erred in sustaining the demurrers to the declaration.

All of the counts contained the following averments: That on September 3, 1909, and for more than five years prior thereto, the plaintiffs owned and possessed a line of steamboats used during all said time to carry passengers and freight for hire on the Illinois river between the city of Peoria and various cities and towns along said river, and to points on said river beyond the city of LaSalle as far as the city of Ottawa; that said river, during all said time, was, as far up said river as the city of Ottawa, a navigable stream leading into the Mississippi river, and as such a pub-

lic highway free to the plaintiffs to use steamboats thereon between the cities of Peoria and Ottawa, except for the obstruction of said river by the defendant; that on September 3, 1909, and for more than five years prior thereto, the defendant was possessed of, using and maintaining a certain railroad bridge across the said river near the city of LaSalle; that defendant, prior to September 3, 1904, was notified that plaintiffs were engaged in the business aforesaid, and that defendant's bridge obstructed the free navigation of said river and injured and damaged plaintiffs' business of carrying passengers and freight between Peoria and Ottawa; that it was the duty of defendant to so maintain said bridge as not to obstruct the free navigation of said river, but the defendant, not regarding its duty, did during all said time unlawfully maintain said bridge too low above the water of the river to permit plaintiffs' steamboats to pass under said bridge to points of destination above and beyond said bridge, whereby plaintiffs, during all said time, were compelled to unload below said bridge their passengers and freight destined to points on the river above said bridge, and were compelled to expend large sums of money in unloading and transferring passengers and freight from below said bridge to their destination above said bridge and in transporting passengers and freight from points above said bridge to below said bridge, and thereby plaintiffs were deprived of great gains and profits that they would otherwise have acquired, and were otherwise injured and damaged in and about their business of carrying passengers and freight. The fourth and fifth counts aver that for many years prior to September, 1904, the river was navigable for steamboats from Peoria to Ottawa, and that notice was given to the defendant frequently during the time for which damages are claimed. The three additional counts aver that the bridge was built in 1887, and that the river was before the construction of the bridge, and still is, a navigable stream, and that the bridge was unlawfully

built without any draw and too low, and that the defendant took possession of and began to use said bridge prior to September 3, 1904. The fifth count charged the defendant with a violation of the statute by maintaining its bridge in such a manner as unnecessarily to impair the usefulness of the river. The second count charged a violation of the statute by failure to restore the stream to its former state. The third count charged a violation of the statute by preventing the navigation of the river during the five years next preceding the commencement of the suit. There is no averment in any of the counts that plaintiffs had any established business on the river and were engaged in transportation above or below the place of the bridge at the time of its construction, nor is there any averment in any of the counts that the plaintiffs had any riparian property rights, either above or below said bridge, which were interfered with by its construction or maintenance.

The substance of the amended declaration is, that the defendant's bridge at LaSalle obstructs the navigation of the Illinois river by plaintiffs' steamboats and has done so for the five years last past; that the Illinois river is now, and has been during the five years last past, a navigable stream; that the plaintiffs desired to navigate the river between LaSalle and Ottawa with their steamboats and have been prevented from doing so by the obstruction complained of, whereby damages have been sustained by the plaintiffs in the loss of profits which might otherwise have been made by the use of their steamboats in carrying passengers and freight to and from points on the Illinois river above the bridge.

In the view we have of this case it will only be necessary to consider one fatal defect in appellants' declaration.

An obstruction of a navigable stream so as to interfere with the free enjoyment of the public easement therein is a public nuisance both under the common law and the statutes of this State. (Gould on Waters, sec. 21; Crim.

Code, sec. 221.) Any person who erects or maintains such obstruction may be proceeded against by indictment or by information filed by the Attorney General to abate such nuisance. A public nuisance may also so injure an individual as to justify him in maintaining an action. Where the proceedings are instituted by a private individual for an injury from a public nuisance the gist of his action is the private injury, and he must allege and prove some special damage different in kind from that suffered by the general public. (*McDonald* v. *English,* 85 Ill. 232; *City of Chicago* v. *Union Building Ass'n,* 102 id. 379; *City of East St. Louis* v. *O'Flynn,* 119 id. 200; *Smith* v. *McDowell,* 148 id. 51; *Chicago General Railway Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 181 id. 605.) In the discussion of this rule counsel on both sides have seen fit to examine and cite a large number of authorities from England and from the various States of the Union. The briefs are very instructive, and if the question here were one of first impression in this court the discussion would be very useful in aiding the court to determine what rule should be followed, but since this court has in the cases above cited settled the general proposition that an individual cannot maintain an action for an injury resulting from a public nuisance without alleging and proving special and peculiar damages, differing in kind, and not merely in degree or extent, from those which the general public sustain, we have no occasion to discuss this question in the light of authorities from other jurisdictions. The rule of law is clear enough, and the only remaining question is whether appellants have alleged such special injury resulting from the maintenance of the bridge in question as the law requires.

It is sometimes a matter not entirely free from difficulty to determine what is and what is not such special injury as will support an action by an individual. The true test seems to be whether the injury complained of is the viola-

tion of an individual right or merely a hindrance to the plaintiff in the enjoyment of the public right. It is common usage to speak of one's right to travel upon a public highway or of his right to use a navigable stream, but it seems to us that it is not quite accurate to call a privilege which one enjoys in common with every other person a personal right; but whether the conception be expressed, as it most commonly is, by calling it a right or privilege or liberty,—which seems more nearly to express the true legal idea,—it is certain that the so-called right of everyone stands upon an exact equality. If a trench be dug across a public street, every person in the community who has occasion to use the street will be delayed and inconvenienced. The loss of time in going around such obstruction would be common to all who used such highway. One person might be delayed only a few seconds, while another, traveling by a different mode of conveyance, might be delayed much longer, and the nature of the business being done might be such that in one case the damage would be nominal while in another it might be considerable, but in all these cases the damages would differ only in degree and not in kind; but if another person, in attempting to use the highway in the exercise of reasonable care, falls into the trench and receives a personal injury, or if his horse should fall into the ditch and receive an injury, clearly an action would lie for the special damage to his person or his property. In the illustration which we have given it will be noted that in the case where the injury was loss of time, business engagements, and the like, there is merely an injury to the public right to use the street, while in the second case the injury to the person and property is a direct trespass upon the individual and invades his personal and individual rights. It will be found upon a careful examination of the cases which sustain the right of an individual to maintain an action for an injury from a public nuisance, that there is some special and particular injury either to

his personal property or established business, and that the recovery is sustained on the ground that his personal and individual rights, other than his right to use the highway, have been invaded.

The case of *Viebahn* v. *Crow Wing County Comrs.* 3 L. R. A. (N. S.) 1126, which is much relied upon by appellants, is not an exception to the above rule. In that case the plaintiffs had an established business and were engaged in operating a line of steamboats on the Mississippi river, a navigable stream, carrying passengers and freight for hire and towing small craft from point to point on the river. The defendant wrongfully and without authority of law constructed a bridge over the river, thereby preventing the plaintiffs from continuing to prosecute their established business. It was determined by the Supreme Court of Minnesota that an action would lie to redress the special damage sustained by the plaintiffs. The case lays stress on the fact that the plaintiffs had an established business. Regarding such established business as a property right belonging to the plaintiffs, which was injured by the wrong of the defendant, the case is no exception to the general rule requiring proof of a special, peculiar injury, different in kind from that sustained by the public at large.

The case of *Smart* v. *Aroostook Lumber Co.* 14 L. R. A. (N. S.) 1083, is a case decided by the Supreme Court of Maine which appellants rely on. There the plaintiff owned a summer residence built on the bank of a navigable stream. The defendant lumber company obstructed the said stream with logs, so that the plaintiff was unable to use his private right of easement of getting into and out of his premises. The case shows that the stream was the only means of ingress to and egress from plaintiff's house, and when that was obstructed he suffered a special and peculiar injury in the enjoyment of his property right in his home. This and other like cases where there was present some circumstance of particular injury, differing in kind, and not merely in

degree, from the injury suffered by the public at large, do not help appellants' case. There is no averment in appellants' declaration of any special and peculiar injury differing in kind from that which every person who might seek to navigate the Illinois river would suffer. It may be that appellants' injury is greater than that of other members of the public because of the desire to make more extensive use of the river than others. There would be a difference in the amount of inconvenience between the man who had one boat and another who owned a dozen boats, but the injury would be of the same general character. It is not the amount of injury that will sustain the individual action but the character of it. Appellants show by their declaration that the bridge in question was erected many years before they engaged in the navigation of the Illinois river. They therefore have not even the injury to an established business to rest their case upon. It is not shown that they have any rights as riparian owners, such as existed in the Maine case above cited. In short, there is nothing shown by the declaration, or any of the counts thereof, in the nature of a special, particular injury to appellants. It is manifest from the averments of the declaration that appellants are seeking to recover damages because they have been hindered and delayed in the exercise of a right or privilege of a purely public nature, and that there is no element of personal or individual injury to a private right shown by the declaration. The declaration was therefore fatally defective and there was no error in sustaining the demurrers thereto.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

FARMER and COOKE, JJ., dissenting.