MARK A. CURL, Plaintiff-Appellant, v. McDONOUGH DISTRICT HOSPITAL, Defendant-Appellee.

Third District   No. 3—85—0273

Opinion filed July 25, 1986.

Patricia A. Walton, of John H. Bisbee Law Offices, of Macomb, for appellant.

Duncan B. Cooper and Mark D. Howard, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff sued defendant McDonough District Hospital and others in the circuit court of McDonough County for personal injuries that he sustained when he and the bicycle he was riding collided with a trash receptacle on defendant's property. The case was tried before a jury, and a verdict was returned for the Hospital.

Plaintiff appeals from the denial of his post-trial motion on grounds that the jury's verdict for defendant is contrary to the manifest weight of the evidence, that certain rulings of the trial court on evidentiary matters deprived plaintiff of a fair trial, and that the trial court erred in denying plaintiff's motion for a directed verdict at the close of all evidence. We affirm.

In a prior appeal, we held in an unpublished order (*Curl v. McDonough District Hospital* (1984), 120 Ill. App. 3d 1170 (unpublished Rule 23 order)) that the trial court had not erred in denying defendant's motion for summary judgment. The facts as presented for our

consideration in that appeal follow. Plaintiff, a high school student at the time, was seriously injured when the bicycle he was riding collided with a large metal refuse dumpster situated on a roadway running between McDonough District Hospital's hospital and its medical clinic in Macomb. The hospital had contracted with Marshall Erdman & Associates, Inc., for the construction of a suite of doctors' offices in a wing of the medical clinic. Marshall Erdman subcontracted with LeRoy Brown & Sons, Inc., for trash dumpsters to be used during the construction project. The particular dumpster involved in the accident was placed on the roadway by employees of LeRoy Brown at the direction of a supervising employee of Marshall Erdman and for the convenience of the construction workers. The dumpster was a red painted metal combination truck-box/refuse container measuring 20 feet by 8 feet by 4 feet with metal wheels, commonly referred to as a "roll-off."

On the date of the accident, May 13, 1980, plaintiff observed the dumpster as he pedalled westward along the roadway on his way to visit his girlfriend that afternoon. Later, on his return home, he again observed the dumpster when he was approximately 110 yards away from it, but was amnesiac from that point until he awoke in an ambulance. The day was sunny, the brakes on plaintiff's bicycle were in good working order, and there were no known witnesses to the accident.

Linda Bedwell, a nurse, heard the collision from her station in the medical-clinic building. When she went to the window facing the roadway, she saw the plaintiff and his bicycle lying on the pavement at the northwest corner of the dumpster. She did not see or hear any vehicles in the vicinity of the accident.

The plaintiff has a medical history of epilepsy and was taking medication at a therapeutic level on the date of the accident. His attending neurologist, Dr. David Good, testified that the plaintiff's seizures had occurred in connection with sleep, but he had not had one for 1½ years prior to the accident. In the opinion of the neurologist, it was extremely unlikely that the plaintiff had suffered an epileptic seizure prior to the collision, but he may have had one as a consequence of it. The plaintiff has been paralyzed below the waist since the accident.

Upon remand from the interlocutory appeal, the matter proceeded to trial and the jury found for the defendant hospital, as aforesaid. As a result of the trial, the facts were expanded and clarified in certain material respects which should be explained before addressing the matters raised for our consideration today. Most notably, plaintiff now

acknowledges that the epileptic seizure he suffered on May 13, 1980, most likely preceded his head-on collision with the dumpster. Medical evidence introduced at trial tended to establish that even though plaintiff's history showed no daytime seizures since he was a young child, there was a 20% chance that the next seizure plaintiff suffered would be a daytime seizure, and this could occur despite the fact that plaintiff's medication was maintained at a therapeutic level.

With respect to the dumpster, it appears from the record before us that the dumpster was placed by former defendant, LeRoy Brown, in a "no parking" zone of a roadway outside of the rear entrance to defendant hospital's Health Services Building. The dumpster was delivered to the site around December of 1979, and remained there, except for purposes of periodic replacement until May of 1980 to accommodate the construction activities of former defendant Marshall Erdman & Associates, Inc. (It appears that plaintiff settled with both LeRoy Brown and Marshall Erdman before the conclusion of the trial.) The roadway in question lies completely within the hospital's jurisdiction and measures 23½ feet in width. It serves traffic traveling from east to west from the doctors' parking lot to Grant Street, although it does not appear to have been clearly marked at all access points as a one-way street. In the normal, westbound flow of traffic, the dumpster would have been on the left side of the road. Plaintiff, however, was traveling eastbound toward the dumpster at the time of the accident. The outer edge of the dumpster extended about 8 feet out from the curb into the road.

Testimony at trial further revealed that certain hospital personnel working at the Health Services Building had in the past made a habit of parking along the curb, instead of in the appropriate parking lot. As a consequence, the hospital administrator had enforced the hospital's no-parking policy in the area where the accident occurred by issuing a memorandum and having the area marked in yellow as a "no parking" zone.

The balance of the factual background of this case has been set forth adequately in our prior order and will not be repeated here except as needed to explain our resolutions of the issues presented in this appeal.

Plaintiff's first issue concerns the trial court's refusal to admit four exhibits into evidence after they had been introduced through various witnesses at trial. Two of the exhibits were memoranda directed by hospital administrator, David McConkey, to Dr. Kling and to Max Byers, the hospital's director of security. The earlier memorandum was dated September 26, 1977, and requested Dr. Kling and his

staff not to park in the area that was subsequently occupied by the dumpster. It explained that several employees had complained and that the parked vehicle(s) created problems of congestion on the roadway. At trial, McConkey identified the document and was examined and cross-examined about its contents.

Similarly, the memorandum directed to Byers was identified and subjected to direct and cross-examination through McConkey. This memorandum, dated October 29, 1979, asked Byers to paint the curb yellow and put up a "no parking" sign.

The purpose of plaintiff's introduction of the foregoing exhibits was to prove circumstantially that defendant hospital had knowledge that the parking of an obstacle along the roadway created a hazardous condition, and that defendant hospital had a known duty to keep such obstacles off the roadway.

The other two exhibits which were also refused admission were ordinances adopted by the defendant hospital district. One was entitled "The McDonough County Hospital District Traffic Control Ordinance" and was filed with the recorder's office on November 30, 1976. The other was "An Ordinance Establishing a Police Department for the McDonough County Hospital District," and was filed with the county clerk on August 27, 1976. McConkey was examined about the ordinances as well. They were enacted for the purpose of regulating traffic and establishing no parking zones on the defendant's property and policing such regulations through an internal security department.

Prior to trial, defendant filed a motion *in limine* to preclude plaintiff's use of evidence of the "no parking" ordinances affecting defendant's property. Although the motion was denied and the exhibits were introduced in plaintiff's case in chief, the court later denied plaintiff's motion to admit the exhibits for the jury's consideration during its deliberations. Plaintiff was not precluded, however, from presenting in closing arguments to the jury its theories of liability based upon a violation of the hospital's "no parking" policy along the roadway where the dumpster had been allowed to remain between December of 1979 and May of 1980.

■■ ■ The admission of evidence is generally a matter that lies within the discretion of the trial court and its decision will not be reversed on appeal unless an abuse of discretion is manifest. (*Bosel v. Marriott Corp.* (1978), 65 Ill. App. 3d 649, 382 N.E.2d 649.) We find no abuse of discretion here.

The trial court's ruling on the foregoing exhibits, it appears, resulted from its conclusion that the ordinances plaintiff sought to ad-

mit were not enacted for the purpose of protecting against the type of injury plaintiff incurred in this case. (See *Kostecki v. Pavlis* (1986), 140 Ill. App. 3d 176, 488 N.E.2d 644 (court affirmed summary judgment for defendants, holding that a city fire-safety ordinance was not enacted to protect against injury to child playing near defective exit door under nonemergency circumstances).) We believe that parking of a dumpster, moreover, was not necessarily the type of traffic control envisioned by the ordinances. Further, even were we to find error in the trial court's refusal to admit the exhibits, it would be harmless to plaintiff in this case. The plaintiff adequately presented his point to the jury.

Assuming, *arguendo*, that the exhibits were relevant, they were so only with respect to the "legal cause" prong of proximate causation. In our determination of the first appeal, we held that "the placement of a large obstruction on the traveled portion of the roadway rendered the possibility of an accident foreseeable, and the plaintiff's injury *** was not 'so extraordinary and unusual that the defendant[s] should not have been required to guard against it.' " (*Curl v. McDonough District Hospital* (1984), 120 Ill. App. 3d 1170 (unpublished Rule 23 order), quoting *Lemings v. Collinsville School District No. 10* (1983), 118 Ill. App. 3d 363, 454 N.E.2d 1139, 1152 (Jones, J., specially concurring).) When we rendered our opinion in the interlocutory appeal, the pleadings and affidavits of record indicated that plaintiff's epileptic seizure probably did not precede his collision with the dumpster. Accordingly, we affirmed the trial court's denial of summary judgment for defendant, holding that proximate causation "remain[ed] a factual question for the jury."

The evidence as it developed at the time of the jury trial established that it was more likely than not that the plaintiff's seizure occurred before he hit the dumpster, when he last remembered seeing it some 150 feet, more or less, away. Plaintiff's primary challenge at trial was thereby shifted from proving "legal cause" to proving that defendant's act or omission was a "cause in fact" of his injury. Under the circumstances, the trial court's rulings on the exhibits cannot be said to constitute an abuse of discretion since they would have been cumulative of testimony adduced at trial on the issue of "legal cause," and none of them would have assisted the jury in its determination of the "cause in fact" prong of proximate causation.

■ For the reason that plaintiff failed to establish that any act or omission of the hospital was a "cause in fact" of his injuries, we must reject as well plaintiff's contentions that he was entitled to a directed verdict based on his nuisance count and that a new trial should have

been granted on ground that the jury's verdict is contrary to the manifest weight of the evidence. Even assuming that the hospital violated the nuisance statute (Ill. Rev. Stat. 1983, ch. 100½, par. 26(5)) by permitting an obstruction or encroachment upon its roadway, plaintiff was still required to prove that such violation was a cause in fact of plaintiff's injury. *Sheehan v. Janesville Auto Transport* (1981), 102 Ill. App. 3d 507, 430 N.E.2d 131.

The dichotomous analysis of proximate causation which we employ here has been explained as follows:

"In order that liability may attach for a negligent act or omission, such a relationship must exist between the act or omission and the injury or damage suffered that the act or omission may be said to be the cause of such injury or damage. [Citations.] ***.

' "Proximate cause" is a term of art which encompasses the distinct concepts of cause in fact and legal cause. Determining whether the defendant's conduct was a cause of plaintiff's injury involves nothing more than an analysis of the facts. Once it is established that the defendant's conduct has in fact been a cause of injury, however, there remains the question whether the defendant should be legally responsible for what he has caused. As otherwise stated, the question is whether the policy of the law will extend defendant's responsibility to the consequences which have in fact occurred.

Two tests are generally applied in determining the issue of causation in fact. Under the "substantial factor" test, the defendant's conduct is a cause of an event if it was a material element and a substantial factor in bringing it about. Under the second test, commonly called the "but for" rule, the defendant's conduct is not a cause of an event if the event would have occurred without it. [Citations.]'

*** [M]any cases consider an issue stated to be that of 'proximate cause' without specifying whether they are concerned with 'cause in fact,' the factual issue, or 'legal cause,' the legal or duty issue. (*Cf. Lemings v. Collinsville School Dist. No. 10* (1983), 118 Ill. App. 3d 363, 454 N.E.2d 1139 (specially concurring opinion).) Liability cannot be predicated upon surmise of conjecture as to the cause of the injury; cause in fact can be established only when there is a reasonable certainty that the defendant's conduct caused the injury. [Citation.]" *Morton v. F.B.D. Enterprises* (1986), 141 Ill. App. 3d 553, 559-60, 490

N.E.2d 995, 999.

In this case, the plaintiff acknowledged that he was traveling against the normal flow of traffic when he headed back home from his afternoon visit with his girlfriend. The absence of any other vehicles around the scene of the accident immediately before or after the collision gives rise to a negative inference that plaintiff was not forced to veer into the dumpster to avoid hitting something else. The photographs of plaintiff's bicycle and the dumpster show that the front wheel is pushed back into the frame and that it left a long distinct vertical marking on the dumpster. This evidence, together with plaintiff's testimony that he was picking up speed along the roadway immediately before he lost consciousness, indicates that he collided head on with considerable force. On these facts, the jury could well determine that the act and any omission of defendant hospital in permitting the dumpster to be placed where it was and in failing to remove it were nonmaterial elements and insubstantial factors in causing plaintiff's injury. Similarly, under the "but for" test, it cannot be said, based on the foregoing evidence, that plaintiff would not have been injured if the dumpster had been stationed elsewhere. Viewing the evidence, as we must, in the light most favorable to the defendant, we find no error in the trial court's denial of plaintiff's motion for a directed verdict on the nuisance count. Under the circumstances, it was within the purview of the jury to determine factually whether the dumpster's obstruction of part of the roadway was a proximate or a remote cause of plaintiff's injuries. The jury's verdict indicates that they found the latter. Because the jury's verdict is not contrary to the manifest weight of the evidence, the trial court did not err in denying plaintiff's motion for a new trial.

For these reasons, we affirm the judgment of the circuit court of McDonough County.

Affirmed.

WOMBACHER and HEIPLE, JJ., concur.