FIRST SPRINGFIELD BANK AND TRUST, Special Adm'r of the Estate of May F. Philippart, Deceased, Plaintiff-Appellant and Cross-Appellee, v. ANGELA S. GALMAN, Defendant (Howard C. Dobson *et al.*, Defendants-Appellees and Cross-Appellants).

Fourth District No. 4—97—0599

Argued May 14, 1998.—Opinion filed November 4, 1998.

Alexandra De Saint Phalle and Thomas F. Londrigan (argued), both of Londrigan, Potter & Randle, P.C., of Springfield, for appellant.

James K. Horstman (argued), Barry L. Kroll, Edward J. Murphy, and C. Barry Montgomery, all of Williams & Montgomery, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

In November 1989, May Philippart, a pedestrian, was struck by a car driven by defendant Angela Galman as she attempted to cross Lawrence Avenue in Springfield in the middle of the block. Plaintiff

First Springfield Bank and Trust (Springfield Bank), acting on behalf of Philippart's estate, sued Galman in a jury trial conducted in March and April 1997. Springfield Bank also named as defendants Archer Daniels Midland Trucking, Inc. (ADM), and its agent Howard Dobson, who illegally parked an ADM tanker truck in a no-parking zone, obstructing the view of both Philippart and Galman. At trial, Springfield Bank raised theories against ADM and Dobson based on negligence and violation of the Public Nuisances Act (Nuisance Act) (Ill. Rev. Stat. 1989, ch. 100½, par. 26(5) (now 720 ILCS 5/47—5(5) (West 1996))). The jury returned a verdict in favor of Philippart, allocating comparative fault between her, Galman, and ADM and Dobson.

Springfield Bank appeals, arguing it was impermissible to allow the jury to reduce damages for Philippart's comparative fault under the nuisance theory. ADM cross-appeals, arguing it was entitled to a directed verdict on both the nuisance and the negligence theories, and the trial court should have reduced the damages because of benefits provided to Philippart by l'Assurance Maladie, the French social security system. We affirm.

## I. BACKGROUND

Around 3:30 p.m. one day in November 1989, Philippart, an 18-year-old French foreign exchange student, was walking home from Springfield High School. Motorist Richard Williams was driving south on English Street and stopped for a couple of minutes at a stop sign at the intersection of English and Lawrence Avenue. Motorist Stan Squires was driving south on Douglas Street, one block west of English Street, approaching the intersection of Douglas and Lawrence. According to Williams, traffic was medium to heavy because of the time of day. Williams observed Philippart walk down the sidewalk on English and turn right and continue to walk on the sidewalk on the north side of Lawrence without crossing the street. Squires testified Philippart could have used the crosswalk at the intersection of English and Lawrence.

A tractor-trailer tanker truck owned by ADM and leased to Dobson was parked on the north side of Lawrence with its eastern-most end 41 feet west of the crosswalk at the intersection of Lawrence and English. The ADM truck was 62.5 feet long. According to Williams, the truck was an obstruction to his view as well as that of Philippart. Squires had to creep forward into the intersection to get a better view of oncoming westbound traffic because the truck obstructed his view.

As Squires turned onto Lawrence, he saw Philippart walk off the sidewalk and proceed to the front corner of the ADM truck, where she

stopped. According to Squires, Philippart could see oncoming westbound traffic by peeking her head into the traffic lanes from behind the truck. Squires stated that until Philippart stepped from behind the truck, a driver heading west could not see her. At this moment, a car, driven by Galman, a 16-year-old girl, was westbound on Lawrence. Philippart waited for Squires' car to clear the ADM truck, then took 1½ steps at a very slow pace, apparently noticed oncoming traffic, and then ran across the street. In his rearview mirror, Squires saw Galman's car veer left and then strike Philippart. After traffic cleared from the right, Williams nosed out to check traffic coming from the other side of the truck and noticed the accident.

Philippart returned to France, where she was treated for her injuries. Farmer's State Bank of Illiopolis (Farmer's Bank), acting as guardian of Philippart, filed suit against Galman in January 1990. In January 1991, it filed an amended complaint naming ADM and Dobson as additional defendants. It alleged Dobson was negligent in illegally parking a truck in a no-parking zone so that it obscured the view and path of motorists, including Galman, and pedestrians, including Philippart, thereby causing the accident.

Philippart died from her injuries in July 1991. She had received 2,490,371.50 French francs ($452,794.82) in benefits from l'Assurance Maladie prior to her death. In January 1996, Farmer's Bank again amended the complaint, substituting for itself its successor in interest, Springfield Bank, as special administrator of Philippart's estate. The amendment also alleged ADM and Dobson created a public nuisance by obstructing or encroaching upon public highways.

A jury trial was held in March and April 1997, and the above testimony from Squires and Williams was heard. Dobson testified that, around 3 p.m. he parked the truck in the westbound lane of Lawrence about a block from his home, directly in front of a sign prohibiting parking there from 7 a.m. to 6 p.m. Dobson misread the sign and believed this was the only legal place in the area to park the truck at the time. Dobson was aware there were 10 schools in the area and most of these schools would be dismissing students at the time the truck was parked there. When Dobson returned to his truck about an hour after he parked there, when the accident was being cleaned up, a police officer issued him a ticket for being illegally parked.

Lewis Baker, an accident reconstructionist, testified that when the tractor-trailer was parked along the north curb of Lawrence, it extended 9 feet into the 22-foot-wide westbound lanes of Lawrence. Baker testified the truck would not have been an obstruction to Philippart's view if she crossed Lawrence at the intersection of English and Lawrence, but it would have been an obstruction if she crossed at

the intersection of Douglas and Lawrence. Joseph Kostur, a former district traffic safety manager for the State of Illinois, testified the ADM truck constituted a huge obstruction to traffic and was a hazard to traffic, including pedestrians. Kostur concluded the truck made it unsafe for Philippart to cross Lawrence Avenue at its intersection with English because she did not have a good view of eastbound traffic. Kostur testified this unsafe condition caused Philippart to go to the front of the truck to view both directions.

Ronald Habegger, a former city traffic engineer for the City of Springfield, testified that, according to an accident study performed before the accident, the intersection of MacArthur and Lawrence (two blocks east of the accident) was the number one site of traffic accidents in Springfield for many years. Habegger testified traffic counts indicated significant westbound traffic between 3:15 p.m. and 4 p.m. Habegger stated parked vehicles adversely affected the free flow of traffic depending on the time of day.

The jury returned a verdict finding in favor of Springfield Bank, finding ADM and Dobson together 50% at fault, Galman 5% at fault, and Philippart 45% at fault. The jury awarded damages of $1 million and then reduced the award by 45% due to Philippart's contributory negligence. In April 1997, ADM and Dobson filed a posttrial motion, claiming Philippart's family had already been reimbursed for her medical expenses in France by l'Assurance Maladie. This motion was denied. In May 1997, Springfield Bank filed a motion seeking a new trial, judgment notwithstanding the verdict, and *additur* because contributory negligence is not a defense to a nuisance suit. This motion was denied.

## II. ANALYSIS

### A. Directed Verdict

■ ADM argues in its cross-appeal that the trial court erred by denying its motion for a directed verdict. Because this presents a threshold issue, we address it before deciding Philippart's appeal. When all the evidence in a case, when viewed in its aspect most favorable to the party opposing the motion, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand, a directed verdict is appropriate. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).

■ ADM argues it was entitled to a directed verdict on the negligence count because Dobson did not owe any duty to Philippart. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 139-40, 554 N.E.2d 223, 226 (1990). ADM argues drivers generally have no duties to pedestrians who are jaywalking in violation of the traffic code. However, under the

Illinois Vehicle Code (Vehicle Code), every driver has the duty of due care to avoid hitting a pedestrian, notwithstanding other provisions of the Vehicle Code. Ill. Rev. Stat. 1989, ch. 95½, par. 11—1003.1. Several cases dealing with contributory negligence imply a driver's duties extend to those who are walking on the highway in violation of the Vehicle Code. See *Riley v. Johnson*, 98 Ill. App. 3d 688, 692-93, 424 N.E.2d 842, 846 (1981); *Kordik v. Kenar*, 112 Ill. App. 2d 371, 376-77, 251 N.E.2d 380, 383-84 (1969); *Rowley v. Rust*, 304 Ill. App. 364, 368, 26 N.E.2d 520, 521 (1940) ("[t]he right of pedestrians to use the highway is a fundamental right").

ADM relies on cases that decline to hold municipalities liable to jaywalking pedestrians for poor care of roads because they are not permitted or intended users of the roads. See *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208-09, 608 N.E.2d 882, 885-86 (1993); *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 422-26, 592 N.E.2d 1098, 1101-03 (1992). These decisions have relied on statutes limiting municipal defendants' liability (see 745 ILCS 10/3—102(a) (West 1992); *Wojdyla*, 148 Ill. 2d at 422-26, 519 N.E.2d at 1101-03) and the intolerable burden such a duty would place on municipalities whose duties already extend to a broad class of persons (*Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 164, 651 N.E.2d 1115, 1119 (1995)). Neither rationale applies to a nonmunicipal defendant. In *Vaughn*, the supreme court specifically declined to issue a general mandate not to jaywalk. See *Vaughn*, 166 Ill. 2d at 164, 651 N.E.2d at 1120.

ADM argues Dobson had no legal duty to preserve an unobstructed view of traffic for others. See *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 49-50, 566 N.E.2d 1365, 1368 (1991); *Pyne v. Witmer*, 159 Ill. App. 3d 254, 260-61, 512 N.E.2d 993, 996-97 (1987), *aff'd on other grounds*, 129 Ill. 2d 351, 543 N.E.2d 1304 (1989) (in the nuisance context). However, neither *Ziemba* nor *Pyne* applies unless the obstruction was on land owned or lawfully occupied by the defendant. See *Gilmore v. Stanmar, Inc.*, 261 Ill. App. 3d 651, 655-62, 633 N.E.2d 985, 989-93 (1994).

More fundamentally, the parked truck not only obstructed Galman's vision, but also limited her ability to swerve right in response to Philippart. ADM argues this was established in Galman's discovery deposition, which was admitted as evidence against Galman, but not against ADM or Dobson. However, Baker testified the ADM truck extended 9 feet into the 22 feet used for both westbound lanes. Even without Galman's deposition, the jury could easily infer the truck kept her from veering right when she was in the middle westbound lane.

■ ADM next attacks the use of the parking ordinance as evidence of negligence. Similar parking provisions of the Vehicle Code have been interpreted to protect pedestrians from personal injury. See

*Moody v. Chicago Transit Authority*, 17 Ill. App. 3d 113, 116-17, 307 N.E.2d 789, 792 (1974); *Schiff v. Oak Park Cleaners & Dyers, Inc.*, 9 Ill. App. 2d 1, 9, 132 N.E.2d 416, 419-20 (1955). *Sheehan v. Janesville Auto Transport*, 102 Ill. App. 3d 507, 513, 430 N.E.2d 131, 134-35 (1981), relied upon by ADM, is distinguishable. The *Sheehan* court relied on the fact the specific ordinance at issue addressed parking near intersections, and the accident did not occur near an intersection. The *Sheehan* court even stated, albeit in *dicta*, the ordinance was designed to protect pedestrians in the road. *Sheehan*, 102 Ill. App. 3d at 513, 430 N.E.2d at 134-35.

We are sympathetic to ADM's argument that a party should not be held liable in tort simply because his parking meter ran out at the wrong time and place. We would reach a different result if the only evidence of negligence were the parking violation. However, even if the parking violation is not determinative, it is still relevant because it would put a reasonable driver on notice that parking in this area at this time may be dangerous. It is evidence which, along with other facts, such as the foreseeability of pedestrians being in the area and the large size of the obstruction, can support a finding of negligence.

ADM argues it is entitled to a directed verdict on the negligence count because the parked truck was not a proximate cause of the accident. It raises a similar argument against Springfield Bank's nuisance theory. See *Curl v. McDonough District Hospital*, 145 Ill. App. 3d 796, 801-02, 495 N.E.2d 1374, 1378 (1986) (defining the causation element in a nuisance case by reference to negligence standards).

■ ADM relies heavily on the distinction between the cause of an injury and a mere condition that allows an injury to occur. If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, it is not the proximate cause of injury. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for causal agencies to act. *Thompson v. County of Cook*, 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294 (1993).

This distinction is not a rigid formula. In fact, it has been noted the distinction is of little use in determining the outcome of any given case. See *Benner v. Bell*, 236 Ill. App. 3d 761, 768, 602 N.E.2d 896, 901 (1992); 4 F. Harper, F. James & O. Gray, Torts § 20.6, at 173 (2d ed. 1986). Courts have reached conflicting results in cases where a parked vehicle obscured the view or path of others. Compare *Baker v. Cities Service Oil Co.*, 321 Ill. App. 142, 143-44, 52 N.E.2d 284, 284-85 (1943) (parked vehicle is a mere condition, not a cause of accident), and *Walker v. Illinois Commercial Telephone Co.*, 315 Ill. App. 553, 562-63, 43 N.E.2d 412, 416-17 (1942) (same), with *Scerba v. City of Chicago*,

284 Ill. App. 3d 435, 440-41, 672 N.E.2d 312, 315-16 (1996) (parked vehicle is a cause, not a mere condition, of an accident), and *Schiff*, 9 Ill. App. 2d at 9-10, 132 N.E.2d at 419-20 (same).

▮ Ultimately, the distinction between condition and cause is a fact-specific analysis of several factors always considered when determining proximate cause. A circumstance is a condition if the forces set in operation by the defendant have come to rest in a position of apparent safety and some new force intervenes. *Duncan v. Rzonca*, 133 Ill. App. 3d 184, 204, 478 N.E.2d 603, 615-16 (1985), citing W. Prosser, Torts § 42, at 248 (4th ed. 1971). Relevant factors include the kind of hazard that was created, its gravity, its relation in time and space to the injury, and whether the defendant could reasonably foresee that an injury would be a likely result of his conduct. See *Scerba*, 284 Ill. App. 3d at 440, 672 N.E.2d at 316.

The issue of proximate cause, like the scope of a defendant's duty, also involves questions of policy. *Benner*, 236 Ill. App. 3d at 765, 602 N.E.2d at 899. We are more likely to conclude the danger created by the defendant has come to rest when there is some social justification for any risk that remains. The *Scerba* court held a bus illegally blocking a crosswalk was a cause, not a mere condition, after noting there was no reason for the bus' presence there. *Scerba*, 284 Ill. App. 3d at 440, 672 N.E.2d at 316. In *Walker*, a telephone company truck parked in the street was a condition, not a cause of an accident, but it had few options but to park there when replacing a telephone pole. *Walker*, 315 Ill. App. at 562-63, 43 N.E.2d at 416-17. *Baker* found a gas truck parked on a city street unloading gasoline into storage tanks at a filling station was a condition, not a cause of an accident, only after commenting on the social utility of gas trucks. *Baker*, 321 Ill. App. at 143-44, 52 N.E.2d at 284-85.

Finally, we focus on the relationship between the circumstances created by the defendant and the intervening force giving rise to the injury. In almost all cases in which a circumstance is deemed a condition rather than a cause, the original wrong somehow became remote, unimportant, a mere aside when considered against the new and unforeseeable negligent conduct that is the immediate cause of the injury. *Scerba*, 284 Ill. App. 3d at 440-41, 672 N.E.2d at 316.

For example, in *Thompson*, the supreme court held an inadequately marked curve in the road was a mere condition, not a cause of an accident. The court relied in large part on the intervening conduct of a driver involved in the accident. The driver was under the influence of alcohol, driving over twice the posted speed limit, and evading police pursuit at the time of the accident. The driver was convicted of reckless homicide. The *Thompson* court concluded the road provided noth-

ing more than a location where the driver's negligence came to fruition. *Thompson*, 154 Ill. 2d at 383, 609 N.E.2d at 294.

■ The facts of this case do not require a conclusion, as a matter of law, that no proximate cause existed. Like the defendant in *Scerba*, and unlike the defendants in *Baker* and *Walker*, Dobson had no justification for parking the truck in the no-parking zone.

Unlike the driver's conduct in *Thompson*, the actions of Philippart and Galman did not constitute some new, unforeseeable and independent force. Dobson's conduct cannot be excused by the intervening negligence of Galman, because Galman's conduct was still foreseeable. See *Benner*, 236 Ill. App. 3d at 767, 602 N.E.2d at 900. In this case, unlike *Baker* and *Walker*, there was testimony the parked vehicle's position forced drivers not involved in the accident to drive erratically as they navigated around it. A defendant may not drop a veil over the highway and claim no responsibility when an accident occurs because the veil is a mere condition.

It was also foreseeable that pedestrians would be in the area because the truck was parked near several schools at a time when schools were dismissing students. See *Scerba*, 284 Ill. App. 3d at 440-41, 672 N.E.2d at 315-16 (bus was not a condition, but a cause of accident when the driver negligently blocked a crosswalk at time school was dismissing students, thereby causing the plaintiff, a child, to cross in front of traffic, where he was hit); *Lemings v. Collinsville School District No. Ten*, 118 Ill. App. 3d 363, 366-67, 454 N.E.2d 1139, 1141 (1983) (proximate cause was an issue of fact when a dumpster was placed by defendant near school and it was foreseeable it would block the vision of both drivers and pedestrian children).

It is no excuse that Philippart may have had a safer path available to her, given that the path she chose was still foreseeable. See *Scerba*, 284 Ill. App. 3d at 441, 672 N.E.2d at 316. The jury took Philippart's negligence into consideration when it reduced her award for contributory negligence. The jury could reasonably infer from the size of the truck and the testimony of Kostur and Williams that Philippart had difficulty looking west at the crosswalk. It was foreseeable that pedestrians in the area would take some type of unusual action to see around the truck. The court did not err by denying the motion for directed verdict.

## B. Whether Philippart is Entitled to Damages Without Reduction for Contributory Negligence

Springfield Bank argues it is entitled to damages without reduction for contributory negligence because it also argued for recovery under the Nuisance Act and, it argues, contributory negligence is not

a defense to a nuisance suit. Springfield Bank claims the conduct of Dobson, ADM's agent, violated the provision of the Nuisance Act that declares it a public nuisance "[t]o obstruct or encroach upon public highways, private ways, streets, alleys, commons, landing places, and ways to burying places." See Ill. Rev. Stat. 1989, ch. 100½, par. 26(5) (now 720 ILCS 5/47—5(5) (West 1996)).

ADM counters the Nuisance Act does not create a private cause of action. It has been assumed to create a cause of action for other types of public nuisances. See *People ex rel. Burris v. C.J.R. Processing, Inc.*, 269 Ill. App. 3d 1013, 1019, 647 N.E.2d 1035, 1039 (1995). The Nuisance Act merely declares the common law. *Gilmore*, 261 Ill. App. 3d at 661, 633 N.E.2d at 992-93. At common law, a party could bring a private action for a public nuisance when he suffered a special or particular injury from it. See *Ruth v. Aurora Sanitary District*, 17 Ill. 2d 1, 17, 158 N.E.2d 601, 605 (1959).

■ Ultimately, however, we do not decide whether the Nuisance Act gives rise to a private cause of action here because we conclude that, if it does, it would still be appropriate to reduce the award because of Philippart's contributory negligence. Because the Nuisance Act is simply a declaration of the common law (*Gilmore*, 261 Ill. App. 3d at 661, 633 N.E.2d at 992-93), we look to the common law to aid in its construction (*People ex rel. Dyer v. Clark*, 268 Ill. 156, 162-63, 108 N.E. 994, 996 (1915)). Earlier Illinois cases recognize a contributory negligence defense to a nuisance. *McEniry v. Tri-City Ry. Co.*, 254 Ill. 99, 102-03, 98 N.E. 227, 228 (1912), citing *David M. Swain & Son v. Chicago, Burlington & Quincy R.R. Co.*, 252 Ill. 622, 627, 97 N.E. 247, 249 (1911), and *Pfau v. Reynolds*, 53 Ill. 212, 213-14 (1870).

Springfield Bank cites several subsequent Illinois cases that state a new rule that contributory negligence is not a defense to a nuisance claim. See *Menolascino v. Superior Felt & Bedding Co.*, 313 Ill. App. 557, 571, 40 N.E.2d 813, 819 (1942); *Woods v. Khan*, 95 Ill. App. 3d 1087, 1090, 420 N.E.2d 1028, 1031 (1981); *Turner v. Thompson*, 102 Ill. App. 3d 838, 842, 430 N.E.2d 157, 161 (1981); *Wheat v. Freeman Coal Mining Corp.*, 23 Ill. App. 3d 14, 17-18, 319 N.E.2d 290, 294 (1974); *Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Comm'n*, 34 Ill. 2d 544, 548, 216 N.E.2d 788, 791 (1966) (in *dicta*); *cf. Johnston v. City of Galva*, 316 Ill. 598, 602-03, 147 N.E. 453, 454 (1925) (property owner had no obligation to mitigate damages from a public nuisance), and *Casey v. Baseden*, 111 Ill. 2d 341, 347, 490 N.E.2d 4, 6 (1986) (contributory negligence is similar in effect to a failure to mitigate damages).

However, several of these cases state this rule in limited terms. See *Belmar*, 34 Ill. 2d at 548, 216 N.E.2d at 791; *Turner*, 102 Ill. App.

3d at 842, 430 N.E.2d at 161; 29 Ill. L. & Prac. *Nuisances* § 13 (1957) (contributory negligence is "ordinarily" not a defense in a nuisance action); *Menolascino*, 313 Ill. App. at 566-67, 40 N.E.2d at 817 (relying on a "general rule" against a contributory negligence defense). These cases drew the rule against a contributory negligence defense from other sources that recognized this defense is allowed in some cases. See *Belmar*, 34 Ill. 2d at 548, 216 N.E.2d at 791; *Turner*, 102 Ill. App. 3d at 842, 430 N.E.2d at 161, citing 66 C.J.S. *Nuisances* § 11 (1950) (which, in turn, recognizes the Restatement (Second) of Torts approach, discussed below); *Menolascino*, 313 Ill. App. at 566-67, 40 N.E.2d at 817, citing 46 C.J. *Nuisances* § 29 (1928) (which, in turn, recognizes the *McEniry* line of cases).

The cases cited by Springfield Bank involve a defendant's use of real property. Commentators have noted a contributory negligence defense is particularly inappropriate in this "classic" type of nuisance suit. See Annotation, *Contributory negligence or assumption of risk as defense to action for damages from nuisance—modern views*, 73 A.L.R.2d 1378, 1381 (1960) (section 3(a)); 58 Am. Jur. 2d *Nuisances* § 451 (1989); 4 F. Harper, F. James & O. Gray, Torts § 22.8, at 319 (2d ed. 1986). However, a contributory negligence defense has been recognized where the suit did not involve real property but instead involved a plaintiff, like Philippart, who was injured while travelling on a public way. See *McEniry*, 254 Ill. at 100, 98 N.E. at 227; *Swain*, 252 Ill. at 623-24, 97 N.E. at 247-48; *Pfau*, 53 Ill. at 213; 4 F. Harper, F. James & O. Gray, Torts § 22.8, at 326 (2d ed. 1986).

There is a second reason for recognizing a contributory negligence defense here. Where acts or omissions constituting negligence also give rise to a nuisance, the two torts can be coexisting and, at times, practically inseparable. 58 Am. Jur. 2d *Nuisances* § 9 (1989). Recognizing a contributory negligence defense in nuisances arising from negligent conduct prevents plaintiffs from evading the defense of contributory negligence by framing a case that would normally arise in negligence in terms of nuisance law. *Young v. Groenendal*, 382 Mich. 456, 462, 169 N.W.2d 920, 922 (1969).

The Restatement has followed those jurisdictions that recognize a contributory negligence defense where a defendant's negligence gives rise to the nuisance claim. Restatement (Second) of Torts § 840B(1), Comment *d* (1979); Annotation, *Contributory negligence or assumption of risk as defense to action for damages from nuisance—modern views*, 73 A.L.R.2d 1378, 1387 (1960) (section 4, collecting cases); *Young*, 382 Mich. at 463, 169 N.W.2d at 922; *McFarlane v. City of Niagara Falls*, 247 N.Y. 340, 347, 160 N.E. 391, 393 (1928); 66 C.J.S. *Nuisances* § 11 (1950); 58 Am. Jur. 2d *Nuisances* §§ 448-49 (1989). Il-

linois common law of nuisance generally parallels the nuisance law outlined in the Restatement (Second) of Torts. *Gilmore*, 261 Ill. App. 3d at 660, 633 N.E.2d at 992; see generally *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 680 N.E.2d 265 (1997).

This section of the Restatement applies to public as well as private nuisances. Restatement (Second) of Torts § 840B(1), Comment *a* (1979). Even though Dobson acted intentionally in parking the ADM truck, the Restatement approach would still recognize a contributory negligence defense because the risk of particular harm to Philippart was a matter of negligence only. See Restatement (Second) of Torts § 840B, Comment *g*, Illustrations 5, 6 (1979); *Young*, 382 Mich. at 462, 169 N.W.2d at 921.

Springfield Bank argues the evidence did not support a claim of contributory negligence. We affirm the jury's finding of contributory negligence because it is not against the manifest weight of the evidence. See *Albaugh v. Cooley*, 87 Ill. 2d 241, 250, 429 N.E.2d 837, 841 (1981). Philippart attempted to cross Lawrence Avenue from behind ADM's truck rather than staying on the sidewalk until she reached a point at which she could safely cross. According to Squires, Philippart noticed oncoming traffic, delayed, and then decided to run across the street.

## C. Whether Damages Should Be Reduced Because of Philippart's Benefits Payments

■ ADM argues it is entitled to reduce the damages pursuant to section 2—1205.1 of the Civil Practice Law (Law) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1205.1) because of benefits received by Philippart from a collateral source. The parties argue whether the French government retains a right of recoupment that, under section 2—1205.1(2), would limit ADM's ability to reduce damages. Ill. Rev. Stat. 1989, ch. 110, par. 2—1205.1(2). Foreign law must be proved as a matter of fact. *In re Marriage of Osborn*, 206 Ill. App. 3d 588, 593, 564 N.E.2d 1325, 1327 (1990). The defendant has the burden of proving the collateral source does not retain a right of recoupment. See *DeCastris v. Gutta*, 237 Ill. App. 3d 168, 175, 604 N.E.2d 359, 364 (1992).

Springfield Bank submitted a translation of a French statute (referred to as "Chapitre 6-Recours des Caisses Contre Les Tiers, Article L.376—1 *et seq.*" from the "Code de la Securite Sociale") that provides l'Assurance Maladie may recover from any judgment against a third party for an injury for which it paid benefits. The statute provides the injured party shall bring the agency into the lawsuit so it can "profit from the common judgment." Finally, the statute provides l'Assurance Maladie can annul any judgment against such a third party if the agency was not included in the suit.

ADM argues a reduction is appropriate because l'Assurance Maladie never perfected its right to recoupment because it was never made a party to the suit. We disagree. Section 2—1205.1 of the Law is in derogation of the common law collateral source rule, which provides damages are not decreased by amounts received by the plaintiff from accident or health insurance. *Wilson v. The Hoffman Group, Inc.*, 131 Ill. 2d 308, 320, 546 N.E.2d 524, 530 (1989). Statutes in derogation of the common law will not be extended any further than the language of the statute absolutely requires by its express terms or clear implication. *In re W.W.*, 97 Ill. 2d 53, 57, 454 N.E.2d 207, 209 (1983).

Section 2—1205.1 allows reduction when there exists a right of recoupment but does not explicitly require perfection of that right. No evidence established a party's failure to bring the agency into the suit amounted to a waiver of the agency's right of recoupment under the French statute. Even if failure to include the agency in the suit amounts to a waiver generally, the trial court could reasonably conclude it does not here, where the agency may not have the alternative, under international law, to annul the judgment. *Cf. Roth v. Roth*, 104 Ill. 35, 44 (1882) (a country's laws have no extraterritorial effect so as to authorize their enforcement in a foreign country).

### III. CONCLUSION

For all of the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

COOK, J., concurs.

JUSTICE STEIGMANN, dissenting:

Although the majority opinion reflects much thought, I disagree with its analysis of the cause/condition dichotomy—the distinction between the cause of an injury and a mere condition that allows an injury to occur. Because I believe that the parking of the truck in this case constituted merely a condition that allowed the injury to occur, I respectfully dissent.

Although the cause/condition dichotomy has been strongly criticized (see *Duncan*, 133 Ill. App. 3d at 204, 478 N.E.2d at 615 (1985) ("the distinction between cause and condition is now almost entirely discredited")), the Supreme Court of Illinois has nonetheless recently reaffirmed it. In *Thompson*, 154 Ill. 2d at 383, 609 N.E.2d at 294, the supreme court wrote the following: "If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury."

In *Thompson*, the plaintiffs argued that the county was negligent in failing to warn motorists adequately of a curve on the road where the automobile accident occurred, and they presented expert testimony to support that contention. *Thompson*, 154 Ill. 2d at 380, 609 N.E.2d at 292. The evidence in *Thompson* also showed that the driver of the car in which plaintiff's decedent was a passenger was drunk and driving at an excessive rate of speed. Indeed, the driver was ultimately convicted of reckless homicide and sent to prison. On these facts, the supreme court concluded that the driver's actions were the sole proximate cause of the accident and that the condition of the road provided nothing more than the location where the driver's negligence came to fruition. *Thompson*, 154 Ill. 2d at 383, 609 N.E.2d at 294.

The majority opinion attempts to distinguish *Thompson* on the ground that the cause/condition dichotomy "is not a rigid formula" and that resolving this distinction "is a fact-specific analysis of several factors always considered when determining proximate cause." 299 Ill. App. 3d at 758-59. However, I find the majority opinion's efforts unavailing, particularly in light of prior case law that applied the cause/condition dichotomy to parked vehicles and concluded that the presence of those vehicles constituted a condition, not a cause.

The first such case is *Walker*, 315 Ill. App. at 555, 43 N.E.2d at 413-14, where defendant's truck was parked on a major thoroughfare in Marion, Illinois, near a "No Parking" sign. The truck had a trailer attached on which a 30-foot-long telephone pole was loaded. The truck and the trailer together were about 34 feet long, and the pole extended another 13 feet over the back of the trailer. The truck was parked several feet from the nearest intersection. *Walker*, 315 Ill. App. at 555-56, 43 N.E.2d at 413-14.

Two automobiles collided on the street where the truck was parked, and the plaintiff (who was in one of the cars) claimed that the other driver could not see him because of the telephone company truck. The appellate court concluded that the parked truck was not the proximate cause of the accident and reversed. "[A]t that particular time, [the telephone company truck] did nothing more than furnish a condition by which the injury to the plaintiff was made possible." *Walker*, 315 Ill. App. at 562, 43 N.E.2d at 416.

The second case is *Baker*, 321 Ill. App. at 143, 52 N.E.2d at 284, in which the defendant company parked its gasoline truck on a city street to unload gasoline into underground storage tanks at a filling station. While the truck was so parked, a small child came from behind the truck and was struck by a passing car. The trial court dismissed plaintiff's complaint, and the appellate court affirmed. In so holding, the court explained that if a negligent act or omission does nothing

more than furnish a condition making an injury possible, and such condition, by the subsequent independent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. The *Baker* court concluded as follows: "[The defendant's] truck was not in motion, but was parked ***. Its position upon the street was obvious to all persons, and a condition necessary to be reckoned with by the traveling public." *Baker*, 321 Ill. App. at 143-44, 52 N.E.2d at 284-85.

The majority opinion attempts to distinguish *Walker* and *Baker*, but I find those efforts unpersuasive. Further, I think imposing potentially millions of dollars of liability upon motorists who park their cars illegally is questionable policy.

A familiar sight in every city is the United Parcel Service or Federal Express truck, typically parked illegally with its hazard lights on, indicating that the driver will return soon. One also frequently sees other vehicles frequently illegally parked when they are involved in delivering pizzas, or picking up or dropping off children at after-school activities. Such vehicles are commonly parked, however temporarily, in no-parking zones along busy streets. Ticket and fine those drivers if we must, but this court ought not take it upon itself to decide that such illegal parking subjects these motorists to millions of dollars of civil liability.