JILL M. BENNER *et al.*, Plaintiffs-Appellants, v. ROGER C. BELL *et al.*, Defendants (Levi E. Schrock, Defendant-Appellee).

Fourth District   No. 4—91—0738

Opinion filed October 29, 1992.

Gregory D. Fombelle and James E. Zachry, both of Burger, Fombelle, Zachry & Rathbun, P.C., of Decatur, for appellants.

Marc J. Ansel, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs brought this action to recover damages allegedly occasioned by defendant Schrock's operation of his horse-drawn buggy. The circuit court of Moultrie County entered summary judgment in favor of Schrock. Plaintiffs appeal, arguing that Schrock's failure to illuminate his buggy was a proximate cause of their injuries. We affirm.

The facts are, unless indicated, agreed upon by the parties. About 6 p.m. on February 3, 1989, plaintiffs Jill Benner, her sons Eric and Justin, and Cara Burwell were southbound on the Arthur-Atwood Road, approximately 2½ miles north of Arthur, Illinois. Defendant Schrock was operating a horse-drawn buggy, also southbound, a short distance ahead of Benner on the paved portion of the highway. Defendant Bell's pickup truck was also southbound on the Arthur-Atwood Road, one-quarter to one-half mile behind the Benner vehicle. Defendant Yeakel and her daughter were northbound on the same road. Deposition testimony as to the conditions of the road varies slightly, but the parties generally agreed the road was icy in patches and the sky was dark with a light mist falling. The Arthur-Atwood Road is a two-lane highway with a 55-mile-per-hour speed limit. The road is straight and level in the area where the incident occurred.

Schrock's buggy was traveling at approximately 10 to 15 miles per hour on the paved portion of the road; the shoulder was not wide enough at that point to accommodate it. Schrock stated his buggy was equipped with "slow moving vehicle" signs on the front and back of

the buggy, reflective tape outlining the buggy's front and rear, battery-operated clear lights in front and amber lights in the rear of the buggy, and two flashing yellow lights higher at the back. The buggy is black.

Schrock testified that, just prior to the occurrence, he observed in his rearview mirror that the Benner vehicle's headlights approached him, then slowed to his pace directly behind him. Plaintiff Jill Benner also testified that, upon seeing the buggy, she slowed her vehicle to a comparable speed and remained approximately one to two car lengths behind the buggy. Benner stated that she saw the orange triangle "slow moving vehicle" reflector but did not see any lights on the buggy. Schrock testified that soon after the Benner vehicle slowed behind him he saw the Yeakel vehicle approaching in the northbound lane. Benner also testified that she saw Yeakel approaching. Benner had a conversation with her passenger, Cara Burwell, about whether she should pass the buggy or wait until the approaching car had passed. Burwell responded that they were in no hurry and "it was better to be safe than sorry" and to let the car pass.

Approximately 10 to 15 seconds after Benner had slowed down to the pace of the buggy, defendant Bell's pickup truck, which had been traveling behind Benner at some distance, crashed into the rear end of the Benner vehicle. The force of the collision caused Benner to swerve into the northbound lane of oncoming traffic, where it was struck by Yeakel. Defendant Schrock's buggy did not contact any other vehicle in the accident. Schrock testified that he saw Bell approaching behind Benner and that Bell did not appear to be slowing before the impact. Benner stated that she had seen Bell's vehicle following some distance behind her but did not see his vehicle in her rear-view mirror just prior to impact.

Bell received a ticket for failing to reduce his speed and was arrested for driving under the influence. He later pleaded guilty in court. Charles Hess, a Moultrie County deputy sheriff, testified during his deposition that Bell's blood-alcohol test showed a level of .25, well over the legal limit. Hess also testified that he saw no apparent reason for Bell not to be able to slow down and no apparent reason for him to collide with the rear end of a slow-moving vehicle.

Bell testified he was traveling about 40 miles per hour, as opposed to the 55-mile-per-hour speed limit, due to patches of ice on the road. He stated that as he approached the Benner and Schrock vehicles he saw only Benner's taillights. Bell testified he could see for three-eighths of a mile, normal visibility being one-half to three-fourths of a mile. Bell said he first saw the Benner vehicle about one-fourth of a

mile away and thought it to be traveling at a normal speed. He then glanced in his rearview mirror and, when he returned his eyes to the road in front of him, the Benner vehicle was only 600 or 700 feet away. At this point he thought the vehicle was stopped but then quickly realized it was moving at a very slow speed. Bell said he applied his brakes to avoid colliding with Benner, but his truck hit a patch of ice and skidded into the rear of Benner's car. Bell stated that he had been traveling about 35 miles per hour and hit Benner at a speed of approximately 25 miles per hour.

Plaintiffs filed suit against Schrock, Bell, and Yeakel. Dale Cordt, the proprietor of the bar where Bell was drinking prior to the accident, is also a dramshop defendant. Yeakel's motion for summary judgment was granted. The claim against Bell was discharged in bankruptcy. The only remaining defendant involved in this appeal is Schrock, in whose favor the summary judgment was entered.

Plaintiffs allege that Schrock's failure to have operating taillights was a proximate cause of the collision because Bell was not properly alerted to the slow-moving vehicle situation and could not slow his vehicle in time to avoid collision with Benner. Defendant Schrock moved for summary judgment after the depositions of all relevant parties had been taken. Because there was an issue of fact as to his lights Schrock conceded, for purposes of his summary judgment motion, that his lights were not working at the time of the accident. He argued that the deposition testimony established that the time interval between Benner's slowing down to the speed of the buggy and Bell's coming upon the scene and striking Benner was long enough to eliminate any sudden decrease in speed of the Benner vehicle as a causative factor of the collision. Plaintiffs responded that if the buggy had been properly lit, Bell would have seen the lighted buggy in front of Benner and would have been better able to slow his vehicle down and avoid collision. On September 11, 1991, the trial court granted summary judgment to Schrock, finding the absence of lighting on Schrock's buggy was not a proximate cause of plaintiffs' injuries as a matter of law. This appeal followed.

██ In order to prevail in an action for negligence, the plaintiff must prove that the defendant owed a duty, that defendant breached that duty, and that defendant's breach was the proximate cause of injury to the plaintiff. (*American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 25, 594 N.E.2d 313, 318.) A dismissal (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) or a summary judgment (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005) is the likely result where there is no duty; whether a duty exists in a particular

case is a question of law to be determined by the court. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 395-96; *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226.) In determining the existence of a duty the "reasonable foreseeability" of injury is one important factor. Other considerations include the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant—questions of policy. *Ward,* 136 Ill. 2d at 140-41, 554 N.E.2d at 226-27; *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 227-28, 531 N.E.2d 1358, 1369-70.

While the issue of duty is a question of law, the issues of breach of that duty and proximate cause are said to be questions of fact for the jury. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 393, 493 N.E.2d 1022, 1028; *American National,* 149 Ill. 2d at 29-30, 594 N.E.2d at 320.) Courts have been criticized for sometimes defining duty very specifically, and affirming summary judgments on the basis of the absence of a duty of care, when the issue could more properly be considered one of breach of duty. (4 R. Michael, Illinois Practice §40.5, at 285-86 (1989).) That criticism appears unfounded. The issues of duty, breach, and proximate cause are not completely separate. Foreseeability is a factor both in determining duty and in determining proximate cause. It is possible to deal with most of the questions which arise in a negligence case in terms of duty. (W. Keeton, Prosser & Keeton on Torts §53, at 356 (5th ed. 1984).) Such an approach may in fact be helpful because it may direct attention to the policy issues which determine the extent of the original obligation, rather than to the mechanical sequence of events which goes to make up causation in fact. (W. Keeton, Prosser & Keeton on Torts §42, at 274 (5th ed. 1984).) The same policy questions which must be addressed in determining duty must be addressed, although more narrowly, in determining proximate cause. Cause in fact, "but for" causation, is not enough for liability. "*** ' "Once it is established that the defendant's conduct has in fact been a cause of the injury *** there remains the question whether the defendant should be legally responsible for what he has caused ***," ' " and that is a question of policy to be resolved by the courts. *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 89, 508 N.E.2d 1201, 1210, quoting *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 333, 369 N.E.2d 1284, 1292, *aff'd in part & rev'd in part* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.

In the present case there is no policy disfavoring liability, whether those policy questions are considered on the issue of duty or the issue

of proximate cause. It cannot be said that the law is offended by a buggy operator being held liable for injuries resulting from his operation of his buggy without lights. Even where there is no public policy against liability, however, a defendant will not be held liable for every injury which is in fact caused by his conduct. A defendant will not be held liable for injuries for which his conduct was a remote cause—only for injuries proximately caused by his conduct, only for foreseeable injuries, only for conduct "which, in natural or probable sequence, produced the injury complained of." (Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1992) (hereinafter IPI Civil 3d).) "Foreseeability" means that which it is objectively reasonable to expect, not merely what might conceivably occur. (*American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320.) Still, there can be liability even if the precise injury which resulted is not foreseen. *Scott & Fetzer*, 112 Ill. 2d at 393, 493 N.E.2d at 1029; *Rowe*, 125 Ill. 2d at 227, 531 N.E.2d at 1369.

Foreseeability questions are generally left to the jury, but proximate cause becomes a question of law when the facts are undisputed and are such that there can be no difference in the judgment of reasonable persons as to the inferences to be drawn from them. (*Durbin v. St. Louis Slag Products Co.* (1990), 206 Ill. App. 3d 340, 357, 564 N.E.2d 242, 253; *Thacker v. U N R Industries, Inc.* (1992), 151 Ill. 2d 343, 355-56.) A number of negligence cases have affirmed summary judgment for defendant, finding no proximate cause as a matter of law. (*West v. Deere & Co.* (1991), 145 Ill. 2d 177, 183, 582 N.E.2d 685, 688 (cultivator designed 6½ inches too wide for traffic lane, but farmer could have chosen a better route, and plaintiff may have swerved over centerline); *Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 1002, 473 N.E.2d 531, 536 (plaintiff's vehicle struck a roadsweeper escort vehicle, with a nonconforming tailgate sign, stopped on the shoulder); *Bogovich v. Nalco Chemical Co.* (1991), 213 Ill. App. 3d 439, 440, 572 N.E.2d 1043, 1043 (plaintiff's vehicle struck defendant's vehicle, allegedly improperly parked on a median strip); *Salinas v. Werton* (1987), 161 Ill. App. 3d 510, 512, 515 N.E.2d 142, 143 (plaintiff struck parked tow truck on shoulder; tow truck was not carrying flares which it could have used to warn traffic); *Ball v. Waldo Township* (1990), 207 Ill. App. 3d 968, 970, 567 N.E.2d 10, 11 (after plaintiff's vehicle left road, he drove through a field, then drove back across the road before impact occurred; held summary judgment was appropriate); *Young v. Texas Eastern Transmission Corp.* (1985), 137 Ill. App. 3d 35, 40, 484 N.E.2d 325, 328 (summary judgment for defendant despite allegations defendant could have avoided accident

after plaintiff's decedent swerved into defendant's lane).) *Anderson v. Jones* (1986), 66 Ill. App. 2d 407, 213 N.E.2d 627, reversed a judgment following jury verdict against defendant Jones, who had caused an accident which blocked a highway; plaintiffs stopped for the Jones accident with no injuries, but after they had been stopped for two or three minutes they were struck by Zehr. However, summary judgment has been reversed in other cases. *Turner v. Roesner* (1990), 193 Ill. App. 3d 482, 485, 549 N.E.2d 1287, 1289 (plaintiff's car crossed into defendant's lane; jury question whether defendant was driving too fast to stop within distance illuminated by headlights); *Chevrie v. Gruesen* (1991), 208 Ill. App. 3d 881, 882, 567 N.E.2d 629, 630 (summary judgment reversed where plaintiff crossed into defendant's lane; jury question whether defendant failed to keep a proper lookout and was driving too fast for conditions).

The existence of an "intervening cause," the negligent, or even criminal, act of a third party which is a cause of the injury, may not insulate a defendant from liability where that intervening cause is foreseeable. (*Rowe*, 125 Ill. 2d at 224, 531 N.E.2d at 1368 (landlord could be liable for damages caused by third party's criminal act, where landlord was aware of outstanding master keys); *Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, 576, 459 N.E.2d 1131, 1132 (county could be liable for negligent installation and maintenance of a guardrail, which plaintiff's car struck while he was bent over tending to a cigarette); *King v. Petefish* (1989), 185 Ill. App. 3d 630, 640, 541 N.E.2d 847, 853-54 (defendant could be liable for death of intoxicated minor to whom she entrusted her mother's car).) There can be more than one proximate cause of an injury. (*Durbin*, 206 Ill. App. 3d at 357, 564 N.E.2d at 253 (tractor-trailer upset could have been caused both by defendant's unbalanced loading, and by plaintiff-driver's dumping while unit was in a jackknife position).) It is interesting that the Illinois civil pattern jury instructions, which devote a great deal of attention to negligence, do not contain an instruction on intervening or superseding cause. The IPI Civil 3d instructions dealing with the conduct of another excuse defendant's conduct only if some other person's conduct was the sole proximate cause of injury to the plaintiff. (IPI Civil 3d Nos. 12.04, 12.05.) Under IPI the conduct of others most often is just a factor to be considered by the jury in determining proximate cause: whether defendant's conduct "in natural or probable sequence, produced the injury complained of." IPI Civil 3d No. 15.01.

It has been suggested that the advent of comparative fault should change our views on conduct which can only remotely be considered

to have caused an injury, *i.e.*, that a remote cause can now appropriately be charged with some slight percentage of liability. (*Holbrook*, 129 Ill. App. 3d at 1001, 473 N.E.2d at 535; *King*, 185 Ill. App. 3d at 641-42, 541 N.E.2d at 854.) That suggestion seems inconsistent with the basic concept of negligence, that a person need not foresee consequences which are highly unlikely to occur, and was apparently rejected in *Ward* (136 Ill. 2d at 145, 554 N.E.2d at 229 ("We hold therefore that the adoption of comparative negligence in this State has no effect on the basic duty a defendant owes to a plaintiff")). Of course, before the demise of contributory negligence it was impossible to have a case where plaintiff's conduct was an intervening cause of an injury, and that is no longer true.

One approach in proximate cause cases is for the court to rule, as a matter of law, that defendant's act was only a condition by which the injury was made possible, and not the cause of the accident. (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 316, 45 N.E.2d 665, 675; *West*, 145 Ill. 2d at 181-82, 582 N.E.2d at 687; *Ball*, 207 Ill. App. 3d at 973, 567 N.E.2d at 13.) That approach is useful in indicating that there is more to liability than cause in fact, that policy decisions must be made as a matter of law, and courts in some cases may make the decision that conduct is only a remote cause of injury. That approach is not much help, however, in determining whether defendant's conduct was a cause or a condition in a particular case. In all these cases there was cause in fact; the accident would not have occurred but for the existence of the "condition." In *Salinas* (161 Ill. App. 3d at 513-14, 515 N.E.2d at 144), plaintiff argued that an accident, where a van drove onto the shoulder of the road and struck the operators of a tow truck, would have been avoided if the tow truck had had flares and had placed them on the roadside (the tow truck did have lights flashing). The argument was rejected as "mere speculation, guess or conjecture." (*Salinas*, 161 Ill. App. 3d at 515, 515 N.E.2d at 144.) Again, the catchword "speculation" does not add much to the analysis, but it does show that at a certain point the possibility that conduct has caused an injury becomes so slight that it may be disregarded as a matter of law.

It was once the law that a mere scintilla of evidence was sufficient to raise a genuine issue of a material fact and defeat a summary judgment. That is no longer true. See Laycock, *Dispositive Pre-Trial Motions in Illinois—Sections 45, 48, and 57 of the Civil Practice Act*, 9 Loy. U. Chi. L.J. 823, 847 (1978); 4 R. Michael, Illinois Practice §40.2 (1989); Schwarzer, Hirsch & Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477 (1991).

"[I]f what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered." (*Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500.)

(See *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505.) On defendant's motion for summary judgment, a plaintiff is not required to establish his case as he would at trial, but he must present some factual basis that would arguably entitle him to a judgment. (*West*, 145 Ill. 2d at 182, 582 N.E.2d at 687.) A plaintiff may not resist a motion for summary judgment, on an issue on which he has the burden of proof, by arguing that it is up to movant to negate his case. *Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 795-96; *Gresham v. Kirby* (1992), 229 Ill. App. 3d 952, 954, 595 N.E.2d 201, 203; *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 325, 91 L. Ed. 2d 265, 275, 106 S. Ct. 2548, 2554 (no burden on movant to produce evidence on issue where nonmovant bears burden of proof; movant may "point[ ] out" there is no evidence to support nonmovant's case).

■ Plaintiff's argument in this case is that Bell, the intoxicated driver following her, would have been able to react to lights on the buggy, although he was not able to react to the lights on her vehicle. Plaintiff's vehicle had been following immediately behind the buggy, at the same speed as the buggy, for about 10 to 15 seconds. The possibility that Bell would have so reacted, in our view, is so remote that a verdict in favor of plaintiff on that basis could never stand. Bell recognized that the Benner vehicle was a slow-moving vehicle, but he still failed to slow down properly and avoid collision, although he testified he had 600 to 700 feet in which to react after he realized the Benner car was moving very slowly or stopped. The accident would not have happened but for the slow-moving buggy's presence on the highway, but that cannot be a basis for liability. Slow-moving horse-drawn buggies are allowed on Illinois highways. Ill. Rev. Stat. 1989, ch. 95½, pars. 11—206, 12—205, 12—709(a).

This case is similar to *Salinas* (161 Ill. App. 3d at 513, 515 N.E.2d at 143), where "[a]ll of the lights on the tow truck were in operation, including the yellow Mars lights, the four-way flashers, the headlights and the taillights," but plaintiff argued that if the tow truck had also had flares it would have made a difference. This case is also similar to *Anderson*, where defendant was admittedly at fault in

the original accident, but a line of cars had then successfully stopped before a third party plowed into the last car in line. In both these cases the court decided the issue in favor of defendant as a matter of law. In *Lindenmier*, left-turn green arrows were not working the day of the accident, and had not been working for several days prior thereto; plaintiff's decedent made a left turn on a solid green light, in the belief that oncoming traffic had a red light. The court found that the display of a solid green light was neither the cause in fact nor the legal cause of decedent's decision to make the left-hand turn, and affirmed a summary judgment against plaintiff, despite the remote possibility that the absence of a working green arrow caused decedent to guess whether oncoming traffic had a red or green light. (*Lindenmier*, 156 Ill. App. 3d at 90, 508 N.E.2d at 1211.) The present case is similar.

The evidence on proximate cause so overwhelmingly favors defendant that a contrary verdict could never stand. The trial court properly entered summary judgment for defendant Schrock.

Affirmed.

GREEN, P.J., and LUND, J., concur.