NO. 4-97-0599

November 4, 1998

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FIRST SPRINGFIELD BANK and TRUST, ) Ap­peal from

Special Administrator of the Estate ) Circuit Court of

of MAY F. PHILIPPART, Deceased, ) Sangamon County

          Plaintiff-Appellant and ) No. 90L26

Cross-Appellee, )

       v. )

ANGELA S. GALMAN, ) 

          Defendant, )

and )

HOWARD C. DOBSON and ADM TRUCKING, )

INC., ) Honorable

Defendants-Appellees and ) Jeanne E. Scott,

          Cross-Appellants. ) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE GARMAN delivered the opinion of 

the court:

In November 1989, May Philippart, a pedestrian, was struck by a car driven by defendant Angela Galman as she at­tempt­

ed to cross Lawrence Avenue in Springfield in the middle of the block.  Plaintiff First Spring­field Bank and Trust (Spring­field Bank), acting on behalf of Philippart's estate, sued Galman in a jury trial conducted in March and April 1997.  Springfield Bank also named as defendants Archer Daniels Midland Trucking, Inc. (ADM), and its agent Howard Dobson, who illegally parked an ADM tanker truck in a no-parking zone, obstructing the view of both Philippart and Galman.  At trial, Springfield Bank raised theo­

ries against ADM and Dobson based on negligence and vio­la­tion of the Public Nui­sances Act (Nui­sance Act) (Ill. Rev. Stat. 1989, ch. 100½, par. 26(5) (now 720 ILCS 5/47-5(5) (West 1996))).  The jury re­turned a verdict in favor of Philippart, allo­cat­ing com­

parative fault between her, Galman, and ADM and Dobson.

Springfield Bank appeals, arguing it was imper­mis­sible to allow the jury to reduce damages for Philippart's com­parative fault under the nuisance theory.  ADM cross-appeals, arguing it was entitled to a directed verdict on both the nui­sance and the neg­ligence theories, and the trial court should have reduced the damag­es be­cause of bene­fits provided to Philippart by l'Assurance Maladie, the French so­cial secu­ri­ty system.  We af­firm.

I.  BACKGROUND 

Around 3:30 p.m. one day in November 1989, Philippart, an 18-year-old French foreign exchange student, was walking home from Spring­field High School.  Motor­ist Rich­ard Wil­liams was driv­ing south on Eng­lish Street and stopped for a cou­ple of min­

utes at a stop sign at the in­ter­sec­tion of English and Law­rence Avenue.  Motorist Stan Squires was driving south on Doug­las Street, one block west of English Street, ap­proaching the inter­section of Douglas and Law­rence.  According to Wil­liams, traf­fic was medi­um to heavy be­cause of the time of day.  Wil­liams ob­

served Philippart walk down the side­walk on Eng­lish and turn right and continue to walk on the side­walk on the north side of Law­rence without crossing the street.  Squires testi­fied Philip­

part could have used the cross­walk at the in­ter­sec­tion of Eng­lish and Lawrence.  

A trac­tor-trail­er tanker truck owned by ADM and leased to Dobson was parked on the north side of Law­rence with its east­

ern-most end 41 feet west of the cross­walk at the in­ter­sec­tion of Law­rence and Eng­lish.  The ADM truck was 62.5 feet long.  Ac­cord­

ing to Wil­liams, the truck was an ob­struction to his view as well as that of Philippart.  Squires had to creep for­ward into the inter­sec­tion to get a bet­ter view of on­com­ing west­bound traf­fic be­cause the truck ob­structed his view.

As Squires turned onto Lawrence, he saw Philippart walk off the side­walk and pro­ceed to the front corner of the ADM  truck, where she stopped.  Ac­cord­ing to Squires, Philippart could see on­coming west­bound traf­fic by peek­ing her head into the traf­

fic lanes from be­hind the truck.  Squires stat­ed that until Philippart stepped from behind the truck, a driver heading west­  could not see her.  At this moment, a car, driv­en by Galman, a 16-year-old girl, was westbound on Lawrence.  Philippart wait­ed for Squires' car to clear the ADM truck, then took 1½ steps at a very slow pace, apparently noticed oncoming traf­fic, and then ran across the street.  In his rearview mir­ror, Squires saw Galman's car veer left and then strike Philippart.  After traf­fic cleared from the right, Wil­liams nosed out to check traf­fic com­ing from the other side of the truck and no­ticed the acci­dent.

Philippart returned to France, where she was treated for her injuries.  Farmer's State Bank of Illiopolis (Farmer's Bank), act­ing as guardian of Philippart, filed suit against Gal­

man in Janu­ary 1990.  In January 1991, it filed an amend­ed com­

plaint naming ADM and Dobson as additional defen­dants.  It al­

leged Dobson was neg­ligent in ille­gally park­ing a truck in a no-

park­ing zone so that it ob­scured the view and path of motor­ists, includ­ing Galman, and pedestri­ans, includ­ing Philippart, thereby caus­ing the accident.

Philippart died from her injuries in July 1991.  She had re­ceived 2,490,371.50 French francs ($452,794.82) in bene­fits from l'Assurance Maladie prior to her death.  In January 1996, Farmer's Bank again amended the com­plaint, substituting for it­

self its successor in interest, Springfield Bank, as spe­cial ad­

min­is­tra­tor of Philippart's es­tate.  The amendment also al­leged ADM and Dobson cre­ated a public nuisance by ob­struct­ing or en­

croaching upon public high­ways.

A jury trial was held in March and April 1997, and the above tes­ti­mo­ny from Squires and Williams was heard.  Dobson testified that, around 3 p.m. he parked the truck in the west­

bound lane of Law­rence about a block from his home, direct­ly in front of a sign prohib­iting parking there from 7 a.m. to 6 p.m.  Dobson misread the sign and be­lieved this was the only legal place in the area to park the truck at the time.  Dobson was aware there were 10 schools in the area and most of these schools would be dismissing stu­dents at the time the truck was parked there.  When Dobson re­turned to his truck about an hour after he parked there, when the acci­dent was being cleaned up, a police offi­cer issued him a ticket for being ille­gally parked.

Lewis Baker, an accident reconstructionist, testi­fied that when the trac­tor-trailer was parked along the north curb of Lawrence, it ex­tended 9 feet into the 22-foot-wide westbound lanes of Law­rence.  Baker testified the truck would not have been an ob­struction to Philippart's view if she crossed Lawrence at the intersection of Eng­lish and Law­rence, but it would have been an obstruc­tion if she crossed at the intersection of Douglas and Law­rence.  Joseph Kostur, a former district traffic safety manag­er for the State of Illi­nois, testi­fied the ADM truck con­stitut­ed a huge ob­struc­tion to traffic and was a haz­ard to traf­fic, in­

clud­ing pedestrians.  Kostur con­clud­ed the truck made it unsafe for Philippart to cross Lawrence Avenue at its inter­sec­tion with English because she did not have a good view of east­bound traf­

fic.  Kostur testi­fied this unsafe con­di­tion caused Philippart to go to the front of the truck to view both direc­tions.  

Ronald Habegger, a former city traffic engineer for the City of Spring­field, testified that, accord­ing to an acci­dent study performed before the acci­dent, the in­ter­sec­tion of MacAr­

thur and Law­rence (two blocks east of the acci­dent) was the num­

ber one site of traffic acci­dents in Spring­field for many years.  Habegger tes­ti­fied traf­fic counts indi­cat­ed sig­nif­i­cant west­bound traffic be­tween 3:15 p.m. and 4 p.m.  Habegger stated parked vehicles ad­versely af­fected the free flow of traffic de­pending on the time of day.   

The jury returned a verdict finding in favor of Spring­

field Bank, finding ADM and Dobson together 50% at fault, Galman 5% at fault, and Philippart 45% at fault.  The jury award­ed dam­

ages of $1 million and then reduced the award by 45% due to Philippart's contributory negligence.  In April 1997, ADM and Dobson filed a posttrial mo­tion, claim­ing Philippart's family had already been reim­bursed for her medical expenses in France by l'Assurance Maladie.  This mo­tion was denied.  In May 1997, Spring­field Bank filed a motion seeking a new trial, judg­ment notwith­standing the ver­dict, and 
addi­tur
 because con­tribu­to­ry negligence is not a de­fense to a nui­sance suit.  This motion was denied.

II.  ANALYSIS

A.  Directed Verdict 

ADM ar­gues in its cross-appeal that the trial court erred by deny­ing its mo­tion for a di­rect­ed ver­dict.  Because this presents a threshold is­sue, we address it before deciding Philip­

part's appeal.  When all the evi­dence in a case, when viewed in its as­pect most fa­vorable to the party op­posing the motion, so over­whelming­ly fa­vors the mov­ant that no contrary verdict based on that evi­dence could stand, a directed verdict is appropriate.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).

ADM argues it was entitled to a directed verdict on the negligence count be­cause Dobson did not owe any duty to Philip­

part.  
Ward v. K mart Corp.
, 136 Ill. 2d 132, 139-40, 554 N.E.2d 223, 226 (1990).  ADM argues drivers generally have no du­ties to pe­des­tri­ans who are jay­walking in vio­la­tion of the traf­fic code.  However, under the Illinois Vehicle Code (Vehicle Code), every driv­er has the duty of due care to avoid hit­ting a pe­des­trian, not­with­stand­ing other pro­vi­sions of the Vehicle Code.  Ill. Rev. Stat. 1989, ch. 95½, par. 11-1003.1.  Sev­eral cases deal­ing with con­trib­u­tory neg­li­gence imply a driver's du­ties ex­tend to those who are walk­ing on the highway in viola­tion of the Vehicle Code.  See 
Riley v. John­son
, 98 Ill. App. 3d 688, 692-93, 424 N.E.2d 842, 846 (1981);  
Kordik v. Kenar
, 112 Ill. App. 2d 371, 376-77, 251 N.E.2d 380, 383-84 (1969); 
Rowley v. Rust
, 304 Ill. App. 364, 368, 26 N.E.2d 520, 521 (1940) ("[t]he right of pe­des­tri­ans to use the high­way is a funda­mental right").  

ADM relies on cases that decline to hold municipali­ties liable to jaywalking pedestrians for poor care of roads be­cause they are not per­mitted or intended users of the roads.  See 
Curatola v. Vil­lage of Niles
, 154 Ill. 2d 201, 208-09, 608 N.E.2d 882, 885-86 (1993); 
Wojdyla v. City of Park Ridge
, 148 Ill. 2d 417, 422-26, 592 N.E.2d 1098, 1101-03 (1992).  These deci­sions have re­lied on stat­utes lim­it­ing municipal defendants' lia­bility (see 745 ILCS 10/3-102(a) (West 1992); 
Wojdyla
, 148 Ill. 2d at 422-26, 519 N.E.2d at 1101-03) and the intolerable burden such a duty would place on munic­ipali­ties whose duties already ex­tend to a broad class of persons (
Vaughn v. City of West Frank­fort
, 166 Ill. 2d 155, 164, 651 N.E.2d 1115, 1119 (1995)).  Nei­ther ratio­

nale ap­plies to a nonmunicipal de­fen­dant.  In 
Vaughn
, the su­preme court spe­cifi­cally de­clined to issue a gen­er­al man­date not to jaywalk.  See 
Vaughn
, 166 Ill. 2d at 164, 651 N.E.2d at 1120. 

ADM argues Dobson had no legal duty to pre­serve an  unob­struct­ed view of traffic for others.  See 
Ziemba v. Mierzwa
, 142 Ill. 2d 42, 49-50, 566 N.E.2d 1365, 1368 (1991); 
Pyne v. Witmer
, 159 Ill. App. 3d 254, 260-61, 512 N.E.2d 993, 996-97 (1987), 
aff'd
 
on
 
other
 
grounds
, 129 Ill. 2d 351, 543 N.E.2d 1304 (1989) (in the nuisance context).  How­ever, neither 
Ziemba
 nor 
Pyne
 applies un­less the ob­struc­tion was on land owned or law­fully occu­pied by the defen­dant.  See 
Gilmore v. Stanmar, Inc.
, 261 Ill. App. 3d 651, 655-62, 633 N.E.2d 985, 989-93 (1994).

More fundamentally, the parked truck not only ob­

structed Galman's vi­sion, but also limit­ed her abili­ty to swerve right in response to Philippart.  ADM argues this was established in Galman's dis­cov­ery deposi­tion, which was admitted as evidence against Galman, but not against ADM or Dobson.  Howev­er, Baker testified the ADM truck extended 9 feet into the 22 feet used for both westbound lanes.  Even without Galman's deposition, the jury could easily infer the truck kept her from veering right when she was in the middle west­bound lane.

ADM next attacks the use of the parking ordi­nance as evidence of negligence. Similar parking provisions of the Vehi­

cle Code have been interpreted to protect pedestrians from per­

sonal injury.  See 
Moody v. Chi­cago Tran­sit Au­thor­i­ty
, 17 Ill. App. 3d 113, 116-17, 307 N.E.2d 789, 792 (1974); 
Schiff v. Oak Park Clean­ers & Dy­ers, Inc.
, 9 Ill. App. 2d 1, 9, 132 N.E.2d 416, 419-20 (1955).  
Sheehan v. Janesville Auto Transport
, 102 Ill. App. 3d 507, 513, 430 N.E.2d 131, 134-35 (1981), relied upon by ADM, is distinguish­able.  The 
Sheehan
 court re­lied on the fact the specific ordi­nance at issue ad­dressed parking near in­ter­sec­

tions, and the acci­dent did not occur near an in­ter­sec­tion.  The 
Sheehan
 court even stated, albeit in 
dicta
, the ordi­nance was de­

signed to pro­tect pe­destrians in the road.  
Sheehan
, 102 Ill. App. 3d at 513, 430 N.E.2d at 134-35.

We are sympathetic to ADM's argu­ment that a party should not be held liable in tort sim­ply be­cause his park­ing meter ran out at the wrong time and place.  We would reach a dif­

fer­ent result if the only evidence of negli­gence were the parking violation.  Howev­er, even if the parking violation is not de­ter­

mi­na­tive, it is still rele­vant because it would put a reason­able driv­er on no­tice that park­ing in this area at this time may be dan­ger­ous.  It is evidence which, along with other facts, such as the fore­see­abili­ty of pe­des­trians being in the area and the large size of the ob­struc­tion, can support a finding of negli­gence.

ADM argues it is entitled to a directed verdict on the negligence count because the parked truck was not a proximate cause of the accident.  It rais­es a simi­lar argu­ment against Spring­field Bank's nui­sance theory.  See 
Curl v. McDonough Dis­

trict Hospi­tal
, 145 Ill. App. 3d 796, 801-02, 495 N.E.2d 1374, 1378 (1986) (defin­ing the cau­sation ele­ment in a nui­sance case by ref­erence to neg­li­gence standards).  

ADM relies heavily on the distinction between the cause of an injury and a mere condition that allows an injury to oc­cur.  If a defendant's negli­gence does nothing more than fur­nish a condi­tion by which injury is made possible, it is not the prox­

imate cause of inju­ry.  The cause of an inju­ry is that which actually pro­duces it, while the occa­sion is that which provides an oppor­tuni­ty for causal agencies to act.  
Thomp­son v. County of Cook
, 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294 (1993).  

 This dis­tinc­tion is not a rigid formula.  In fact, it has been noted the distinction is of lit­tle use in de­ter­min­ing the out­come of any given case.  See 
Benner v. Bell
, 236 Ill. App. 3d 761, 768, 602 N.E.2d 896, 901 (1992); 4 F. Harp­er, F. James & O. Gray, Torts §20.6, at 173 (2d ed. 1986).  Courts have reached con­flict­ing re­sults in cases where a parked vehicle ob­scured the view or path of others.  Com­pare 
Baker v. Cit­ies Ser­vice Oil Co.
, 321 Ill. App. 142, 143-44, 52 N.E.2d 284, 284-85 (1943) (parked vehi­cle is a mere condi­tion, not a cause of acci­dent), and 
Walk­er v. Illi­nois Com­mer­cial Tele­phone Co.
, 315 Ill. App. 553, 562-63, 43 N.E.2d 412, 416-17 (1942) (same), with 
Scerba v. City of Chi­

ca­go
, 284 Ill. App. 3d 435, 440-41, 672 N.E.2d 312, 315-16 (1996) (parked vehi­cle is a cause, not a mere con­di­tion, of an acci­

dent), and 
Schiff
, 9 Ill. App. 2d at 9-10, 132 N.E.2d at 419-20 (same).

Ultimately, the distinction between con­di­tion and cause is a fact-spe­cif­ic anal­ysis of sev­eral fac­tors al­ways con­sidered when de­ter­mining proxi­mate cause.  A cir­cum­stance is a con­di­tion if the forc­es set in oper­ation by the de­fendant have come to rest in a posi­tion of appar­ent safety and some new force inter­venes.  
Duncan v. Rzonca
, 133 Ill. App. 3d 184, 204, 478 N.E.2d 603, 615-

16 (1985), citing W. Prosser, Torts §42, at 248 (4th ed. 1971).  Relevant factors include the kind of hazard that was created, its gravity, its relation in time and space to the inju­ry, and wheth­

er the defen­dant could reasonably foresee that an injury would be a likely result of his conduct.  See 
Scerba
, 284 Ill. App. 3d at 440, 672 N.E.2d at 316.

The issue of proximate cause, like the scope of a de­

fendant's duty, also involves questions of policy.  
Benner
, 236 Ill. App. 3d at 765, 602 N.E.2d at 899.  We are more likely to con­clude the danger created by the defendant has come to rest when there is some social justification for any risk that re­

mains.  The 
Scerba
 court held a bus illegally blocking a cross­

walk was a cause, not a mere condition, after noting there was no reason for the bus' pres­ence there.  
Scerba
, 284 Ill. App. 3d at 440, 672 N.E.2d at 316.  In 
Walk­er
, a tele­phone com­pa­ny truck parked in the street was a condition, not a cause of an accident, but it had few op­tions but to park there when re­plac­ing a tele­

phone pole.  
Walk­er
, 315 Ill. App. at 562-63, 43 N.E.2d at 416-

17.  
Baker
 found a gas truck parked on a city street unloading gaso­line into stor­age tanks at a filling sta­tion was a condition, not a cause of an accident, only after commenting on the social util­ity of gas trucks.  
Baker
, 321 Ill. App. at 143-44, 52 N.E.2d at 284-85. 

Finally, we focus on the relationship between the cir­

cum­stances created by the defendant and the intervening force giv­ing rise to the inju­ry.  In almost all cases in which a cir­

cumstance is deemed a condition rather than a cause, the orig­i­nal wrong some­how became remote, unimportant, a mere aside when con­sidered against the new and unforeseeable negligent con­duct that is the immediate cause of the injury.  
Scerba
, 284 Ill. App. 3d at 440-41, 672 N.E.2d at 316.

For example, in 
Thomp­son
, the su­preme court held an inad­e­quately marked curve in the road was a mere condi­tion, not a cause of an acci­dent.  The court relied in large part on the intervening conduct of a driver in­volved in the acci­dent.  The driver was under the influ­ence of alco­hol, driving over twice the posted speed limit, and evading police pur­suit at the time of the accident.  The driver was convicted of reckless homicide.  The 
Thomp­son
 court con­clud­ed the road pro­vid­ed noth­ing more than a loca­tion where the driver's neg­li­gence came to fru­ition.  
Thomp­

son
, 154 Ill. 2d at 383, 609 N.E.2d at 294.   

The facts of this case do not require a conclusion, as a matter of law, that no proximate cause existed.  Like the de­

fendant in 
Scerba
, and un­like the defendants in 
Baker
 and 
Walker
, Dobson had no jus­ti­fi­cation for parking the truck in the "no-

park­ing" zone.

Unlike the driver's conduct in 
Thompson
, the ac­tions of Philippart and Galman did not constitute some new, un­fore­see­able and inde­pen­dent force.  Dobson's con­duct can­not be ex­cused by the in­ter­ven­ing neg­li­gence of Galman, be­cause Galman's conduct was still foresee­able.  See 
Benner
, 236 Ill. App. 3d at 767, 602 N.E.2d at 900.  In this case, un­like 
Baker
 and 
Walk­er
, there was tes­ti­mo­ny the parked vehicle's posi­tion forced driv­ers not in­

volved in the accident to drive erratically as they navi­gated around it.  A de­fen­dant may not drop a veil over the high­way and claim no re­spon­si­bility when an acci­dent occurs be­cause the veil is a mere con­di­tion.

It was also fore­see­able that pe­des­tri­ans would be in the area be­cause the truck was parked near sev­er­al schools at a time when schools were dismiss­ing stu­dents.  See 
Scerba
, 284 Ill. App. 3d at 440-41, 672 N.E.2d at 315-16 (bus was not a condi­tion, but a cause of acci­dent when the driver negli­gent­ly blocked a cross­walk a time school was dismissing students, there­by caus­ing the plain­tiff, a child, to cross in front of traffic, where he was hit); 
Lemings v. Collinsville School District No. Ten
, 118 Ill. App. 3d 363, 366-67, 454 N.E.2d 1139, 1141 (1983) (proximate cause was an issue of fact when a dumpster was placed by defen­

dant near school and it was fore­see­able it would block the vision of both drivers and pe­des­trian chil­dren).

It is no ex­cuse that Philippart may have had a safer path avail­able to her, given that the path she chose was still fore­see­able.  See 
Scerba
, 284 Ill. App. 3d at 441, 672 N.E.2d at 316.  The jury took Philippart's neg­li­gence into con­sid­er­ation when it reduced her award for con­trib­u­to­ry negli­gence.  The jury could rea­son­ably infer from the size of the truck and the tes­ti­

mo­ny of Kostur and Wil­liam that Philippart had dif­fi­cul­ty look­ing west at the cross­walk.  It was foresee­able that pedestri­ans in the area would take some type of unusual action to see around the truck.  The court did not err by denying the motion for directed verdict. 

B.  Whether Philippart is Entitled to Damages 

Without Reduction for Contributory Negligence 

Springfield Bank argues it is entitled to damages with­

out reduction for contributory negligence because it also argued for recovery under the Nuisance Act and, it argues, con­tributory neg­li­gence is not a de­fense to a nui­sance suit.  Springfield Bank claims the conduct of Dobson, ADM's agent, vio­lated the provision of the Nui­sance Act that de­clares it a pub­lic nui­sance "[t]o ob­

struct or en­croach upon pub­lic high­ways, pri­vate ways, streets, alleys, com­mons, landing places, and ways to bury­ing places."  See Ill. Rev. Stat. 1989, ch. 100½, par. 26(5) (now 720 ILCS 5/47-5(5) (West 1996)).  

ADM counters the Nuisance Act does not create a pri­vate caus­e of action.  It has been assumed to create a cause of action for other types of public nuisances.  See 
People ex rel. Burris v. C.J.R. Processing, Inc.
, 269 Ill. App. 3d 1013, 1019, 647 N.E.2d 1035, 1039 (1995).  The Nui­sance Act mere­ly de­clares the com­mon law.  
Gilmore
, 261 Ill. App. 3d at 661, 633 N.E.2d at 992-

93.  At com­mon law, a party could bring a pri­vate ac­tion for a public nui­sance when he suf­fered a special or par­ticular inju­ry from it.  See 
Ruth v. Auro­ra Sani­tary Dis­trict
, 17 Ill. 2d 1, 17, 158 N.E.2d 601, 605 (1959).

Ultimately, however, we do not decide whether the Nui­

sance Act gives rise to a private cause of action here because we conclude that, if it does, it would still be appropriate to re­

duce the award because of Philippart's contributory negligence.  Be­cause the Nui­sance Act is sim­ply a dec­la­ra­tion of the common law (
Gilmore
, 261 Ill. App. 3d at 661, 633 N.E.2d at 992-93), we look to the common law to aid in its con­struction (
Peo­ple ex rel. Dyer v. Clark
, 268 Ill. 156, 162-63, 108 N.E. 994, 996 (1915)).  Ear­lier Illinois cases recog­nize a con­trib­u­to­ry neg­li­gence de­

fense to a nuisance.  
McEniry v. Tri-City Ry. Co.
, 254 Ill. 99, 102-03, 98 N.E. 227, 228 (1912), cit­ing 
David M. Swain & Son v. Chicago, Burlington & Quincy R.R. Co.
, 252 Ill. 622, 627, 97 N.E. 247, 249 (1911), and 
Pfau v. Reynolds
, 53 Ill. 212, 213-14 (1870).  

Springfield Bank cites several subsequent Illinois cases that state a new rule that con­trib­u­to­ry neg­li­gence is not a de­fense to a nui­sance claim.  See 
Menolascino v. Superi­or Felt & Bed­ding Co.
, 313 Ill. App. 557, 571, 40 N.E.2d 813, 819 (1942); 
Woods v. Khan
, 95 Ill. App. 3d 1087, 1090, 420 N.E.2d 1028, 1031 (1981); 
Turn­er v. Thomp­son
, 102 Ill. App. 3d 838, 842, 430 N.E.2d 157, 161 (1981); 
Wheat v. Free­man Coal Mining Corp.
, 23 Ill. App. 3d 14, 17-18, 319 N.E.2d 290, 294 (1974); 
Belmar Drive-In Theatre Co. v. Illinois State Toll High­way Comm'n
, 34 Ill. 2d 544, 548, 216 N.E.2d 788, 791 (1966) (in 
dic­ta
); 
cf
. 
Johnston v. City of Galva
, 316 Ill. 598, 602-03, 147 N.E. 453, 454 (1925) (prop­er­ty owner had no obli­ga­tion to miti­gate dam­ages from a pub­lic nui­

sance), and 
Casey v. Baseden
, 111 Ill. 2d 341, 347, 490 N.E.2d 4, 6 (1986) (con­trib­u­to­ry negli­gence is similar in effect to a fail­

ure to miti­gate dam­ages).

However, sev­er­al of these cases state this rule in lim­

it­ed terms.  See 
Belmar
, 34 Ill. 2d at 548, 216 N.E.2d at 791; 
Turn­er
, 102 Ill. App. 3d at 842, 430 N.E.2d at 161; 29 Ill. L. & Prac. 
Nuisances
 §13 (1957) (con­trib­u­to­ry negli­gence is "or­di­nari­

ly" not a de­fense in a nui­sance ac­tion); 
Menolascino
, 313 Ill. App. at 566-67, 40 N.E.2d at 817 (re­ly­ing on a "gen­eral rule" against a con­trib­u­to­ry neg­li­gence de­fense).  These cases drew the rule against a con­tribu­tory neg­li­gence de­fense from other sources that recog­nized this de­fense is al­lowed in some cases.  See 
Belmar
, 34 Ill. 2d at 548, 216 N.E.2d at 791; 
Turn­er
, 102 Ill. App. 3d at 842, 430 N.E.2d at 161, cit­ing 66 C.J.S. 
Nui­sances
 §11 (1950) (which, in turn, recognizes the Re­statement (Second) of Torts ap­proach, dis­cussed be­low); 
Menolascino
, 313 Ill. App. at 566-67, 40 N.E.2d at 817, cit­ing 46 C.J. 
Nui­sanc­es
 §29 (1928) (which, in turn, recog­nizes the 
McEniry
 line of cas­es). 

The cases cited by Spring­field Bank in­volve a defendant's use of real prop­er­ty.  Com­men­tators have noted a con­

trib­utory negligence de­fense is partic­u­larly inappropriate in this "clas­sic" type of nui­sance suit.  See Annotation, 
Contribu­

tory negligence or assumption of risk as defense to action for damages from nuisance--modern views
, 73 A.L.R.2d 1378, 1381 (1960) (section 3(a)); 58 Am. Jur. 2d 
Nui­sanc­es
 §451 (1989); 4 F. Harper, F. James & O. Gray, Torts §22.8, at 319 (2d ed. 1986).  However, a contributory neg­li­gence de­fense has been rec­og­nized where the suit did not in­volve real property but in­stead in­volved a plain­tiff, like Philippart, who was in­jured while trav­elling on a public way.  See 
McEniry
, 254 Ill. at 100, 98 N.E. at 227; 
Swain
, 252 Ill. at 623-24, 97 N.E. at 247-48; 
Pfau
, 53 Ill. at 213; 4 F. Harper, F. James & O. Gray, Torts §22.8, at 326 (2d ed. 1986).

There is a second reason for recognizing a contributo­ry negligence defense here.  Where acts or omissions constitut­ing negligence also give rise to a nuisance, the two torts can be coexisting and, at times, practically in­separable.  58 Am. Jur. 2d 
Nui­sanc­es
 §9 (1989).  Rec­og­niz­ing a con­trib­u­to­ry neg­li­gence de­fense in nui­sances aris­ing from negligent conduct pre­vents plain­tiffs from evad­ing the de­fense of con­trib­u­tory neg­li­gence by fram­ing a case that would normally arise in negli­gence in terms of nui­sance law.  
Young v. Groenendal
, 382 Mich. 456, 462, 169 N.W.2d 920, 922 (1969).

The Re­state­ment has fol­lowed those ju­ris­dic­tions that rec­og­nize a con­trib­u­to­ry neg­li­gence de­fense where a defendant's negli­gence gives rise to the nui­sance claim.  Re­state­ment (Sec­

ond) of Torts §840B(1), Comment 
d
 (1979); Annotation, 
Contribu­

tory negligence or assumption of risk as defense to action for damages from nuisance--modern views
, 73 A.L.R.2d 1378, 1387 (1960) (section 4, col­lecting cases); 
Young
, 382 Mich. at 463, 169 N.W.2d at 922; 
McFarlane v. City of Niagara Falls
, 247 N.Y. 340, 347, 160 N.E. 391, 393 (1928); 66 C.J.S. 
Nuisances
 §11 (1950); 58 Am. Jur. 2d 
Nuisances
 §§448-49 (1989).  Illinois com­

mon law of nuisance generally paral­lels the nuisance law out­lined in the Restatement (Second) of Torts.  
Gilmore
, 261 Ill. App. 3d at 660, 633 N.E.2d at 992; see gen­eral­ly 
In re Chi­cago Flood Litiga­tion
, 176 Ill. 2d 179, 680 N.E.2d 265 (1997).

This sec­tion of the Restatement applies to pub­lic as well as private nuisances.  Restatement (Sec­ond) of Torts §840B(1), Comment 
a
 (1979).  Even though Dobson acted intention­

ally in parking the ADM truck, the Restatement approach would still recog­nize a con­tributory negli­gence defense because the risk of par­tic­u­lar harm to Philippart was a mat­ter of neg­li­gence only.  See Restate­ment (Sec­ond) of Torts §840B, Comment 
g
, Il­lus­

tra­tions 5, 6 (1979); 
Young
, 382 Mich. at 462, 169 N.W.2d at 921.

Springfield Bank argues the evidence did not sup­port a claim of contributory negligence.  We affirm the jury's finding of contributory negli­gence because it is not against the mani­fest weight of the evi­dence.  See 
Albaugh v. Cooley
, 87 Ill. 2d 241, 250, 429 N.E.2d 837, 841 (1981).  Philippart at­tempt­ed to cross Law­rence Avenue from behind ADM's truck rather than staying on  the side­walk until she reached a point at which she could safely cross.  Ac­cord­ing to Squires, Philippart no­ticed on­com­ing traf­

fic, de­layed, and then decided to run across the street.  

C.  Whether Damages Should Be Reduced Because of 

Philippart's Benefits Payments

ADM argues it is entitled to reduce the damages pursu­

ant to section 2-1205.1 of the Civil Practice Law (Law) (Ill. Rev. Stat. 1989, ch. 110, par. 2-1205.1) be­cause of bene­fits re­

ceived by Philippart from a collateral source.  The parties argue wheth­er the French gov­ern­ment retains a right of recoupment that, under section 2-1205.1(2), would limit ADM's ability to reduce damages.  Ill. Rev. Stat. 1989, ch. 110, par. 2-1205.1(2).  For­

eign law must be proved as a matter of fact.  
In re Mar­riage of Osborn
, 206 Ill. App. 3d 588, 593, 564 N.E.2d 1325, 1327 (1990).  The de­fen­dant has the bur­den of prov­ing the collat­er­al source does not retain a right of re­coup­ment.  See 
DeCastris v. Gutta
, 237 Ill. App. 3d 168, 175, 604 N.E.2d 359, 364 (1992).  

Springfield Bank submitted a translation of a French statute (referred to as "Chapitre 6-Recours des Caisses Contre Les Tiers, Article L.376-1 
et
 
seq
." from the "Code de la Securite Sociale") that pro­vides l'Assurance Maladie may re­cov­er from any judg­ment against a third party for an injury for which it paid bene­fits.  The stat­ute provides the injured party shall bring the agency into the law­suit so it can "profit from the common judg­

ment."  Finally, the stat­ute provides l'Assurance Maladie can annul any judgment against such a third party if the agency was not includ­ed in the suit.

ADM argues a reduction is appropri­ate because l'Assurance Maladie never per­fect­ed its right to recoupment be­

cause it was never made a party to the suit.  We disagree.  Sec­

tion 2-1205.1 of the Law is in dero­ga­tion of the common law col­

lateral source rule, which pro­vides dam­ag­es are not de­creased by amounts re­ceived by the plain­tiff from acci­dent or health insur­

ance.  
Wil­son v. The Hoffman Group, Inc.
, 131 Ill. 2d 308, 320, 546 N.E.2d 524, 530 (1989).  Statutes in dero­gation of the common law will not be extended any further than the language of the statute abso­lutely requires by its ex­press terms or clear im­pli­

cation.  
In re W.W.
, 97 Ill. 2d 53, 57, 454 N.E.2d 207, 209 (1983).  

Section 2-1205.1 allows re­duc­tion when there exists a right of re­coup­ment but does not explicitly re­quire per­fec­tion of that right.  No evidence estab­lished a party's fail­ure to bring the agency into the suit amounted to a waiver of the agency's right of re­coup­ment under the French statute.  Even if fail­ure to in­clude the agency in the suit amounts to a waiv­er gen­er­al­ly, the trial court could rea­son­ably conclude it does not here, where the agen­cy may not have the al­ter­na­tive, under in­ter­na­tion­al law, to annul the judg­ment.  
Cf
. 
Roth v. Roth
, 104 Ill. 35, 44 (1882) (a country's laws have no ex­traterri­torial effect so as to au­tho­rize their en­forcement in a foreign coun­try).  

III.  CONCLUSION

For all of the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

COOK, J., concurs.

STEIGMANN, J., dissents.

JUSTICE STEIGMANN, dissenting:

Although the majori­ty opinion reflects much thought, I dis­agree with its analysis of the cause/condition dichot­omy--the distinc­tion between the cause of an injury and a mere condi­tion that allows an injury to occur.  Because I believe that the park­

ing of the truck in this case constituted merely a condi­tion that allowed the injury to occur, I re­spect­fully dis­sent.

Although the cause/condition dichotomy has been strong­

ly criticized (see 
Duncan
, 133 Ill. App. 3d at 204, 478 N.E.2d at 615 (1985) ("the distinction between cause and condi­tion is now almost entirely discredited")), the Supreme Court of Illinois has nonetheless recently reaffirmed it.  In 
Thompson
, 154 Ill. 2d at 383, 609 N.E.2d at 294, the supreme court wrote the follow­ing:  "If a defendant's negli­gence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury."  

In 
Thomp­son
, the plaintiffs argued that the county was negli­gent in failing to warn motorists adequately of a curve on the road where the automobile accident occurred, and they pre­

sented expert testimony to support that conten­tion.  
Thomp­son
, 154 Ill. 2d at 380, 609 N.E.2d at 292.  The evidence in 
Thomp­son
 also showed that the driver of the car in which plaintiff's dece­dent was a passenger was drunk and driving at an excessive rate of speed.  Indeed, the driver was ultimately con­victed of reck­

less homicide and sent to prison.  On these facts, the supreme court concluded that the driver's actions were the sole proximate cause of the accident and that the condition of the road provided nothing more than the location where the driver's negligence came to fruition.  
Thompson
, 154 Ill. 2d at 383, 609 N.E.2d at 294.  

The majority opinion attempts to distinguish 
Thomp­son
 on the ground that the cause/condition dichotomy "is not a rigid formula" and that resolving this distinction "is a fact-specific analysis of several factors always considered when de­termining proximate cause."  Slip op at 10.  However, I find the majority opinion's efforts unavailing, partic­ularly in light of prior case law that applied the cause/condition dichotomy to parked vehi­cles and concluded that the presence of those vehicles constitut­ed a condition, not a cause.

The first such case is 
Walker
, 315 Ill. App. at 555, 43 N.E.2d at 413-14, where defendant's truck was parked on a major thor­ough­fare in Marion, Illinois, near a "No Parking" sign.  The truck had a trailer attached on which a 30-foot-long tele­phone pole was loaded.  The truck and the trailer together were about 34 feet long, and the pole extended another 13 feet over the back of the trailer.  The truck was parked several feet from the near­

est inter­section.  
Walker
, 315 Ill. App. at 555-56, 43 N.E.2d at 413-14.

Two automobiles collided on the street where the truck was parked, and the plaintiff (who was in one of the cars) claimed that the other driver could not see him because of the telephone company truck.  The appel­late court concluded that the parked truck was not the proximate cause of the acci­dent and re­

versed.  "[A]t that partic­ular time, [the tele­phone company truck] did nothing more than furnish a condi­tion by which the injury to the plaintiff was made possi­ble."  
Walker
, 315 Ill. App. at 562, 43 N.E.2d at 416. 

The second case is 
Baker
, 321 Ill. App. at 143, 52 N.E.2d at 284, in which the defen­dant company parked its gaso­line truck on a city street to unload gasoline into under­ground stor­

age tanks at a filling sta­tion.  While the truck was so parked, a small child came from behind the truck and was struck by a pass­

ing car.  The trial court dis­missed plaintiff's com­plaint, and the appel­late court af­firmed.  In so holding, the court explained that if a negligent act or omission does nothing more than fur­

nish a condition making an injury possible, and such condition, by the subsequent inde­pendent act of a third person, causes an injury, the two acts are not concur­rent and the exis­tence of the condi­tion is not the proximate cause of the injury.  The 
Baker
 court concluded as follows:  "[The defendant's] truck was not in motion, but was parked ***.  Its posi­tion upon the street was obvi­ous to all per­sons, and a condition nec­essary to be reck­oned with by the travel­ing public."  
Baker
, 321 Ill. App. at 143-44, 52 N.E.2d at 284-85.

The majority opinion attempts to distinguish 
Walk­er
 and 
Baker
, but I find those efforts unpersuasive.  Further, I think imposing potentially millions of dollars of liabil­ity upon motor­

ists who park their cars illegally is ques­tionable poli­cy.  

A familiar sight in every city is the United Par­cel Service or Federal Express truck, typically parked ille­gally with its hazard lights on, indicating that the driver will return soon.  One also frequently sees other vehi­cles frequent­ly ille­

gally parked when they are in­volved in deliv­ering pizzas, or picking up or dropping off children at after-school activi­ties.  Such vehicles are commonly parked, however tempo­rarily, in no- parking zones along busy streets.  Ticket and fine those drivers if we must, but this court ought not take it upon itself to de­

cide that such illegal parking subjects these motorists to mil­

lions of dollars of civil liability.